**Allan G. CHARLES, M.D., et al., Plaintiffs–Appellees,**

**v.**

**Richard M. DALEY, State's Attorney of Cook County, Illinois, et al., Defendants,**

**and**

**Eugene F. Diamond, M.D., Estate of Jasper F. Williams, M.D., and David K. Campbell, Intervening Defendants–Appellants.**

Nos. 86–1552, 86–3137.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1987.

Decided May 5, 1988.

Rehearing and Rehearing In Banc Denied July 22, 1988.

---

Colleen K. Connell, Roger Baldwin Found. of ACLU, Inc., Chicago, Ill., for plaintiffs-appellees.

Edward R. Grant, Chicago, Ill., for intervening defendants-appellants.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Intervening defendants-appellants (hereinafter "intervenors") appeal from two orders of the district court awarding plaintiffs-appellees ("plaintiffs") an aggregate

sum of $312,842.20, of which $212,310.35 was assessed against various intervenors, as costs and attorneys' fees pursuant to 42 U.S.C. § 1988. The litigation underlying the district court's fee award involves the plaintiffs' nearly six-year battle in the district court, this court and the Supreme Court against the intervenors and various governmental officials of the State of Illinois to set aside S.B. 47, the Illinois Abortion Act of 1975, enacted as amended October 30, 1979. This case presents an issue of first impression in this circuit: Whether private intervening parties who have not been found liable for a violation of plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983, may nevertheless be held liable for an award of attorneys' fees under 42 U.S.C. § 1988.[1] We affirm the assessment of costs and fees against the intervenors but adjust downward the fees imposed by the district court for the Supreme Court phase of this litigation.

## I. FACTS

The plaintiffs in this action are Illinois physicians who provide a full range of family planning services, including abortions, to their patients. On October 30, 1979, the plaintiffs brought suit under 42 U.S.C. § 1983 challenging the constitutionality of the Illinois Abortion Act on behalf of their female patients. The Act was an attempt by the state legislature to comprehensively regulate the practice of performing abortions and included provisions subjecting physicians to criminal prosecution for violations of what this court previously termed its "daedalian" prescriptions. *See Charles v. Carey*, 627 F.2d 772, 775 (7th Cir.1980)

(Pell, J.). The plaintiffs sought injunctive and declaratory relief against those Illinois officials charged with implementing and enforcing the Act—the Illinois Attorney General, the Director of Illinois' Department of Public Health and the State's Attorney of Cook County, who was sued both in his official capacity and as a representative of the defendant class of all Illinois State's Attorneys. On October 31, 1979, the district court granted plaintiffs' motion for a temporary restraining order barring enforcement of the entire Act as amended.

Within days of the entry of the district court's restraining order, intervenors Eugene Diamond, M.D., Jasper F. Williams, M.D., and David Campbell moved to intervene in the lawsuit as defendants. Doctors Diamond and Williams sought intervention both to defend the rights and interests of their prenatal patients as well as to protect their own professional and pecuniary interests placed at risk by the plaintiffs' challenge of the Act. Dr. Diamond also sought intervention as a parent of an unemancipated minor daughter of childbearing age. Campbell sought to intervene based upon his status as the spouse of a woman of childbearing age. The plaintiffs strenuously opposed the intervenors' motion to intervene on the grounds that the intervenors lacked any legally cognizable interest in the litigation and, alternatively, that participation as *amici curiae* would suffice to protect those interests posited by the intervenors. Notwithstanding the plaintiffs' objections, however, the district court granted the motion to intervene. In the meantime, the intervenors were granted leave to file their own Answer, a Memorandum in

---

1. Our own research reveals that three other appellate courts have addressed the issue of intervenor fee liability under section 1988. *Annunziato v. The Gan, Inc.*, 744 F.2d 244 (2d Cir.1984); *Grano v. Barry*, 783 F.2d 1104 (D.C.Cir.1986); *Reeves v. Harrell*, 791 F.2d 1481 (11th Cir.1986). Although the Catholic League for Religious and Civil Rights, acting as *amicus curiae* at the appellate level, raised the arguments advanced and ultimately accepted in *Reeves*—that intervening defendants seeking themselves to vindicate countervailing constitutional rights (so-called "functional plaintiffs") should not be held liable for

fees unless their claims are frivolous—the intervenors have abandoned their version of this argument for purposes of appeal by raising it only in their Reply Brief. Just as a party is barred procedurally from raising for the first time on appeal an argument it failed to include in its Opening Brief, *see Appley v. West*, 832 F.2d 1021, 1030 (7th Cir.1987), so too an *amicus* ordinarily may not press arguments on appeal that the parties have waived by raising them belatedly. Accordingly, under these circumstances the merits of the functional plaintiff analysis are not properly before us.

Opposition to Plaintiffs' Motion for a Preliminary Injunction, and other documents.

On November 16, 1979, the district court granted in part the plaintiffs' motion for a preliminary injunction against enforcement of several of the Act's provisions. The intervenors and governmental defendants appealed from the district court's ruling and the plaintiffs cross-appealed. On appeal, this court affirmed the district court's preliminary injunction; we also directed, as the plaintiffs had requested, that enforcement of several additional statutory provisions be preliminarily enjoined. *Charles v. Carey*, 627 F.2d 772 (7th Cir.1980).

On remand, the district court subsequently enjoined the operation of additional provisions of the Act, but the court deferred ruling on the plaintiffs' motion to enjoin use of the remainder of the Act pending the Supreme Court's decision in *City of Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983). In the wake of the Court's decision in *Akron*, the district court reconsidered the plaintiffs' motion and preliminarily enjoined enforcement of several additional, but still not all, of the provisions of the Act. *Charles v. Carey*, 579 F.Supp. 377 (N.D.Ill.1983). By the time proceedings in the district court were concluded, the court had permanently enjoined enforcement of twenty-five sections of the Act, including its primary operative provisions. *See Charles v. Carey*, 579 F.Supp. 464 (N.D.Ill.1983).

The intervenors, together with the Illinois Attorney General and State's Attorney Daley, immediately appealed the issuance of the permanent injunction, but only with respect to three key sections of the Act. The plaintiffs cross-appealed, alleging that the district court erred in finding constitutional a previously disputed section of the Act. Once again, the intervenors were dealt another setback; we affirmed the permanent injunction of the three sections already enjoined and also held the fourth

section unconstitutional. *Charles v. Daley*, 749 F.2d 452 (7th Cir.1984).

Following their second defeat before this court, intervenors Diamond and Williams filed both a notice of appeal and a jurisdictional statement with the Supreme Court on February 28, 1985. Neither the Illinois Attorney General nor State's Attorney Daley joined in these submissions. The Supreme Court granted review and the case was fully briefed and argued on November 5, 1985. Subsequently, in *Diamond v. Charles*, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), the Court dismissed the appeal concluding that absent the participation of the governmental defendants, Doctor Diamond lacked standing to prosecute the appeal.[2] This court's decision in *Charles v. Daley*, 749 F.2d 452 (7th Cir. 1984), thus stands as the final word on the constitutionality of the amended Illinois Abortion Law of 1975.

Our recapitulation of the procedural posture of this case notwithstanding, this appeal does not concern the merits of the previous litigation; rather, we are concerned only with the propriety of the district court's award of fees to the plaintiffs for expenses they incurred throughout the protracted course of this lawsuit. On two separate occasions, pursuant to 42 U.S.C. § 1988, the plaintiffs filed petitions for an award of attorneys' fees and costs for work performed in the district court. Neither petition specifically sought fees and costs from the intervenors. The Illinois Attorney General filed a response to the plaintiffs' petition, as did State's Attorney Daley; neither defendant raised the issue of the intervenors' liability for fees. Eventually, the district court issued an order awarding $181,287.84 in attorneys' fees and costs to the plaintiffs as "prevailing parties"; nowhere, however, did the order specify whether or not the intervenors as well as the governmental defendants were jointly liable for the plaintiffs' fees and costs. Instead, the order simply stated, "Fees and costs in the amount of $181,-287.84 shall be awarded."

---

**2.** After the notice of appeal was filed, but prior to oral argument of the case, Dr. Williams died. No one was substituted for him as a party

pursuant to Supreme Court Rule 40. *See* n. 22, *infra.* Mr. Campbell did not join the appeal of the case to the Supreme Court.

The intervenors subsequently filed a motion in the district court under Federal Rule of Civil Procedure 59(e) to clarify the district court's earlier order concerning their liability for fees and costs. The intervenors asserted that they could not properly be held liable for the plaintiffs' costs and fees and that the judgment should be amended to reflect the governmental defendants' sole liability. The district court ordered all parties to brief the question of intervenor liability. On April 22, 1985, the district court issued a new order expressly finding all three intervenors liable for fees due to their role as "fully participating parties in the lawsuit" and apportioning their liability at one-half of the total amount of fees awarded to the plaintiffs. In addition, the court increased its award of fees by $19,775.85 to $201,063.69, in accordance with the plaintiffs' supplemental petition for fees on appeal. The intervenors' share of fee liability was therefore assessed initially at $100,531.84.

Pursuant to a second Rule 59(e) motion by the intervenors, the district court amended its order of April 22, 1985 to correct a clerical error which improperly included among the intervening parties their counsel, the Americans United for Life Legal Defense Fund. The district court also directed the parties to brief the applicability of the recently decided case of *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), on the issue of the intervenors' fee liability. After considering the parties' briefs addressing the relevance of *Graham*, the district court issued an order affirming its April 22 decision awarding district court and appellate fees against each of the intervenors, Campbell, Williams, and Diamond. The intervenors filed a timely notice of appeal. *See Charles v. Daley*, 799 F.2d 343 (7th Cir.1986).

Finally, on July 14, 1986 and August 4, 1986, the plaintiffs filed supplemental motions in the district court for attorneys' fees arising out of the Supreme Court phase of the litigation. A barrage of re-plies and sur-replies ensued, and on December 5, 1986, the district court entered judgment against Doctors Diamond and Williams, awarding the plaintiffs $111,778.51 as fees for their appeal to the Supreme Court. The intervenors also timely appealed from this second award of attorneys' fees and we have consolidated both appeals inasmuch as they arise from the same underlying dispute and involve virtually identical legal arguments. At issue in these cases are separate judgments totalling $89,399.87 against intervenors Diamond and Williams and a judgment of $33,510.61 against intervenor Campbell.

## II. DISCUSSION

On appeal, the intervenors challenge both the propriety of the fee awards entered against them pursuant to 42 U.S.C. § 1988 and the reasonableness of the fees imposed in connection with the argument of the case before the Supreme Court.[3] Initially, the intervenors argue that the fee award against them under section 1988 arising out of the district court and appellate proceedings that have been conducted to date is inappropriate because they were not found to have violated any of the plaintiffs' constitutional rights; rather, they merely sought, along with the governmental defendants, to uphold the constitutionality of the state abortion statute. Second, the intervenors assert that the award of fees against them stemming from the Supreme Court phase of the litigation is similarly improper because section 1988 makes fees awardable only "as part of the costs" and the Supreme Court, in dismissing the intervenors' appeal for lack of standing, did not award costs to the plaintiffs. Third, the intervenors contend that an award of fees against them arising out of *any* of the proceedings in this lawsuit violates their First Amendment right to participate in litigation as a means of political expression. Fourth, and finally, the intervenors maintain that even assuming *arguendo* that the award of Supreme Court fees against them

---

**3.** Intervenors do not challenge the reasonableness of the fees imposed by the district court for the proceedings there or on appeal to this court.

was proper, the amount of fees and costs imposed was both unreasonable and excessive. We address these arguments in turn.

### A. The Intervenors' Liability for Section 1988 Fees Resulting From Litigation in the District Court and the Court of Appeals

Fee shifting statutes, while far from unique,[4] represent explicit, congressionally-fashioned exceptions to the general rule—commonly known as the "American Rule" —that each party to a legal dispute is responsible for payment of its own attorneys' fees incurred prior to or during litigation, regardless of the outcome of the suit in the courts. *See e.g., Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court held that with three very narrow exceptions, none of which is applicable here,[5] federal courts lack the inherent power or authority to award attorneys' fees to a prevailing party unless an act of Congress expressly so provides. *Id.* at 269, 95 S.Ct. at 1627. Section 1988 of Title 42 of the United States Code, the statute with which we are presently concerned, is just such an exception to the American Rule and, in fact, was enacted in 1976 as a direct consequence of the *Alyeska* decision. *See* H.R. Rep. No. 1558, 95th Cong., 2d Sess. at 2; *see also* S.Rep. No. 1011, 94th Cong., 2d Sess. at 1, *reprinted in* 1976 U.S.Code Cong. & Admin.News, p. 5908. Despite requiring congressional authorization for judicial fee-shifting, the Court in *Alyeska* reaffirmed its earlier holding in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968),[6] that where Congress has so provided, an award of attorneys' fees should *ordinarily* be made to the successful plaintiff absent exceptional circumstances. *Id.* at 402, 88 S.Ct. at 966; *Alyeska*, 421 U.S. at 262, 95 S.Ct. at 1624.[7]

In seeking to determine whether Congress intended to authorize the award of fees to the plaintiffs and against the intervenors in the instant case, we begin our analysis with the language of section 1988 itself. *See Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir.1987) (plain language of a statute is the best evidence of its meaning). Entitled "Proceedings in vindication of civil rights; attorney's fees," section 1988 provides in relevant part:

> ... In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, *in its discretion*, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

(Emphasis added). Had plaintiffs named only state officials as defendants in their section 1983 action, they would, as prevailing parties, have been presumptively entitled to attorneys' fees from the defendants. The presence of private intervening parties, however, may alter this result because section

---

**4.** An appendix to Justice Brennan's dissenting opinion in *Marek v. Chesny*, 473 U.S. 1, 43–51, 105 S.Ct. 3012, 3035–39, 87 L.Ed.2d 1 (1985), includes a list of 120 different fee-shifting statutes. The list does not purport to be exhaustive.

**5.** The three exceptions include the historical power of a court of equity "to permit ... a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit." *Alyeska*, 421 U.S. at 257, 95 S.Ct. at 1621. The other exceptions involve situations where courts, as part of their inherent power to police those practicing before them, may award attorneys' fees against

parties for willful disobedience of court orders or because of vexatious conduct amounting to bad faith. *Id.* at 258, 95 S.Ct. at 1622.

**6.** Although *Newman* involved the fee-shifting provisions of Title II of the Civil Rights Act of 1964, the House Report on section 1988 explicitly refers to language in *Alyeska* which endorses the presumption stated in *Newman*. *See* H.R. Rep. No. 1558 at 2. The Senate Report on section 1988 contains a similar reference to *Newman, see* S.Rep. No. 1011 at 4, 1976 U.S. Code Cong. & Admin.News at 5911.

**7.** The intervenors do not point to the existence of any such "exceptional circumstances" in this case.

1988 neither explicitly contemplates the participation of intervenors in civil rights litigation nor specifically enumerates those against whom an award of fees may be appropriately assessed.

The intervenors state correctly that they could not properly have been named as defendants in the plaintiffs' section 1983 action, which alleged violations of constitutional rights performed "under color of state law." *See* 42 U.S.C. § 1983. It follows logically, according to the intervenors, that because the constitutional injuries sustained by the plaintiffs were the direct result of Illinois' passage of its abortion statute, the intervenors cannot be held liable for attorneys' fees incurred by the plaintiffs in challenging the constitutionality of the state law. In support of their position, the intervenors point both to the absence of any language in section 1988 making private intervening parties potentially liable for attorney fee awards as well as to Supreme Court precedent, most notably *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). *Graham* is purported to be consistent with the view that only those parties actually found liable for the relief sought by civil rights plaintiffs may be held liable for plaintiffs' attorneys' fees. The plaintiffs, on the other hand, contend that "prevailing party" status, and not liability for relief on the merits, is the *sine qua non* for an award of attorneys' fees under section 1988. Imposing liability for fees on intervenors, the plaintiffs maintain, is not only in keeping with the legislative intent of Congress in enacting section 1988 but is also in accord with the district court decision in the virtually identical case of *Akron Center for Reproductive Health v. City of Akron*, 604 F.Supp. 1268 (N.D.Ohio 1984). In that case, upon remand from the Supreme Court, the district court assessed plaintiffs' attorneys' fees in part against private intervening defendants.

■ If section 1988 unequivocally prescribed all those against whom attorneys' fees could be imposed, our task would be simple; unfortunately, as even the Supreme Court has recently recognized, section 1988 does not specify with particularity those who may be called upon to shoulder its fee awards. *See Graham*, 473 U.S. at 164, 105 S.Ct. at 3104–05. Consequently, we must resort to section 1988's legislative history in an effort to determine those against whom such awards may operate. As the intervenors correctly observe, examination of the legislative history of section 1988 reveals two primary objectives which Congress hoped to promote: first, to encourage private citizens to initiate court action to correct violations of the Nation's civil rights statutes, *see* H.R.Rep. No. 94–1558 at 1; and second, to insure that those who violate the Nation's fundamental laws do not proceed with impunity, *see* S.Rep. No. 94–1011 at 2, 1976 U.S.Code Cong. & Admin.News at 5909. However, although punishment and deterrence are undeniably important purposes of section 1988, the House and Senate Committee Reports leave us convinced that section 1988's overriding goal was to reimburse with a reasonable attorneys' fee those who as "private attorneys general" take it upon *themselves* to invoke and thereby invigorate federal constitutional and statutory rights.[8]

■ Thus, while it is true that neither section 1988 nor its legislative history exhaustively categorizes those potentially liable for fee awards, both the statute and the

---

**8.** The House Report on section 1988 states in part:

The effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens. Although some agencies of the United States have civil rights responsibilities, their authority and resources are limited. In many instances where these laws are violated, it is necessary for the citizen to initiate court action to correct the illegality. Unless the judicial remedy is full and complete, it will remain a meaningless right ...

H.R.Rep. No. 1558 at 1. The Senate Report is equally explicit in its recognition of the role played by private enforcement of civil rights statutes:

... All of [the] civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have meaningful opportunity to vindicate the important Congressional policies which these laws contain.

S.Rep. No. 1011 at 2, 1976 U.S.Code Cong. & Admin.News p. 5910.

House and Senate Reports that preceded its enactment fail specifically to exempt any class of losing defendants from fee liability. In fact, given the conscious decision by Congress to effectuate the enforcement of the civil rights laws primarily by providing attorneys' fee awards as an incentive to private civil rights plaintiffs, it is both consistent with and in furtherance of section 1988's purpose to interpret the statute to encompass the fee liability of unsuccessful intervening parties. We therefore agree with the plaintiffs that because section 1988's paramount concern was to fashion the parameters of *eligibility* for fee awards, rather than to fix with precision the bounds of *liability* for such awards, the critical distinction for purposes of fixing fee liability in the somewhat atypical circumstances presented in this case is between prevailing and non-prevailing plaintiffs; it is not, as the intervenors argue, the distinction between intervening defendants found liable for substantive relief on the merits and intervening defendants not held liable for such relief.

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court directed that a party seeking attorneys' fees pursuant to section 1988 be deemed "prevailing" if he or she "succeeds on any significant issue which achieves some of the benefit plaintiff sought in bringing suit." *Id.* at 433, 103 S.Ct. at 1939; *see also Zabkowicz v. West Bend Co.*, 789 F.2d 540, 548 (7th Cir.1986). With respect to the litigation underlying the instant appeal, the plaintiffs certainly qualify as prevailing parties under the *Hensley* test. In the words of the district court:

> Due to [the plaintiffs'] efforts, the great bulk of Illinois' lengthy and complex omnibus abortion law was declared unconstitutional and permanently enjoined. The state legislature also amended an

important provision of the law after plaintiffs had succeeded in obtaining a preliminary injunction against the original language. These accomplishments easily meet the 'generous' accepted formulation for a prevailing party.

(Footnotes omitted) (Mem.Op., September 28, 1984 at p. 2). The intervenors, as they must, concede that the plaintiffs prevailed against the governmental defendants, but assert that since Illinois alone was in a position to furnish the plaintiffs with the relief they sought, the plaintiffs can only recover attorneys' fees from the governmental defendants—the parties *directly* responsible for the plaintiffs' constitutional injuries. We reject the intervenors' interpretation of section 1988 for it erroneously presupposes that the statute flatly precludes fee awards against private intervenors; in our view, such an interpretation represents too facile an approach to the central question: Did the plaintiffs in fact prevail *against the intervenors?*

In analyzing this question, we cannot and refuse to ignore the fact that the intervenors' unilateral decision, one week after the plaintiffs filed suit, to join with the state defendants in adamantly defending the constitutionality of the Abortion Act rendered them full-fledged parties to the lawsuit and entitled them to participate independently in all phases of the litigation. Indeed, the district court expressly found that the intervenors adopted the posture of "fully participating parties ... argu[ing] every issue with vigor equal to, or greater than the efforts of the state defendants." (Mem.Op., April 22, 1985 at p. 3). Furthermore, throughout these proceedings, both in the district court and on appeal to this court, the state defendants time and again have adopted as their own the briefs, motions, and other opposing papers filed by the intervenors [9] who, for all practical pur-

9. So far as we are able to discern, the following submissions by the intervenors were adopted by some or all of the governmental defendants: (1) the intervenors' Motion to Strike, filed November 9, 1979; (2) the intervenors' Motion and Brief in Support of Summary Judgment, filed July 9, 1982; and (3) the intervenors' brief in response to the Supreme Court's decision in

*Akron*, filed July 29, 1983. The intervenors were the exclusive movants for reconsideration of the district court's preliminary injunction with respect to §§ (4) and (10) of the abortion statute, filed on November 11, 1979. Furthermore, in the initial appeal of this case to this court, the intervenors filed for themselves and on behalf of all defendants a petition and mem-

poses, were their alter ego—a fact borne out by the intervenors' ultimate decision to appeal the case to the Supreme Court despite the State of Illinois' relunctance to so proceed. And finally, putting to one side the plaintiffs' victory with respect to the overall outcome of the underlying litigation —the setting aside of substantially the entire abortion statute—we consider it particularly relevant that the plaintiffs have prevailed against the intervenors with respect to each and every section of the abortion statute in which the intervenors claimed to have had interests separate and distinct from those asserted by the state defendants.[10]

Consistent with the intent of Congress, the test for a prevailing party must be one

that does not exalt form over substance; the record in this case establishes that the plaintiffs have consistently prevailed on the merits of each of the substantive issues in dispute. Thus, notwithstanding the fact that the intervenors were not and could not themselves have been found guilty of violations of the plaintiffs' constitutional rights, the foregoing facts amply demonstrate the reasonableness of the district court's conclusion that "plaintiffs can be fairly said to have prevailed equally against both parties—the State defendants *and* the intervenors" (emphasis supplied). (Mem.Op., April 22, 1985 at pp. 3–4).[11]

Not surprisingly, both the plaintiffs and the intervenors refer us to case law which

orandum requesting *en banc* consideration of our decision directing the district court to enjoin an additional section of the statute. *See Charles v. Carey,* 627 F.2d at 790. Finally, neither governmental defendant filed a brief in defendants' second appeal to this court, *Charles,* 749 F.2d 452, but rather adopted as their own the brief filed by the intervenors and permitted the intervenors to present the only oral argument in the case.

10. For example, the challenged sections of the Abortion Act requiring mandatory parental and spousal notification were permanently enjoined and declared unconstitutional as were two key sections of the law attempting (1) to protect the fetus from the imposition of "organic pain" during abortion and (2) to provide for the preservation of the fetus' life notwithstanding the woman's decision to abort.

11. Both the intervenors and the dissent cite *Hewitt v. Helms,* —— U.S. ——, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), for the proposition that the plaintiffs in this case did not "prevail" for purposes of section 1988 because they failed to obtain any relief *"which affects the behavior of the defendant towards the plaintiff."* *Id.,* 107 S.Ct. at 2676 (emphasis in original). While such language from *Helms* is quoted accurately, it was intended by the Supreme Court, in considering whether Helms had sufficiently "prevailed," to point up the obvious difference between obtaining a "judicial pronouncement," as the plaintiffs did in this case, and merely generating what amounts to an advisory opinion, as Helms' litigation did. Thus, *Helms* cannot fairly be read as a general statement on the circumstances under which a losing civil rights defendant, let alone an unsuccessful intervening defendant, may be held liable for section 1988 fees. Furthermore, the precise question at issue in *Helms,* "whether a party who litigates to judgment and *loses on all of his claims* can

nonetheless be a 'prevailing party' for purposes of an award of attorney's fees," *id.* at 2674 (emphasis supplied), is far removed from the facts of this case. Here, the plaintiffs successfully litigated literally every substantive issue raised during the course of the lawsuit; hence, there can be no doubt as to whether they "prevailed" and whether, in turn, they are eligible for an award of fees.

*Annunziato v. The Gan, Inc.,* 744 F.2d 244 (2d Cir.1984), upon which the dissent also relies, presents a far less compelling case for the imposition of section 1988 fees than the situation with which we are here confronted. In marked contrast to the intervenors in the case at bar, the defendant in *Annunziato,* a non-state actor, was "an innocent third party caught in the cross-fire between plaintiffs and the [defendant]...." *Id.* at 253. Furthermore, the plaintiffs in *Annunziato* refused to allow the non-governmental and arguably blameless defendant to withdraw from the suit. In our case, the intervenors voluntarily thrust themselves into the lawsuit and rather than attempting to minimize their participation in the litigation, tenaciously engaged the plaintiffs in a protracted and costly court battle to an extent that even the governmental defendant, the State of Illinois, was unprepared to go. Were we to hold, as would the dissent, that section 1988 absolutely precludes the imposition of fee liability against the intervenors, from whom could the plaintiffs then recover the more than $100,000 in attorneys' fees they incurred in defending their judgment before the Supreme Court against an appeal filed and prosecuted *solely* by the intervenors? (An appeal, we hasten to add, that the Court unanimously voted to dismiss due to the intervenors' lack of standing.) We respectfully submit that to leave the plaintiffs to bear their own attorneys' fees under these circumstances would effectively eviscerate the intent of Congress in enacting section 1988.

each side claims to support, directly or by analogy, its position on the fee liability of "innocent" intervening parties—those guilty themselves of no violation of federal law. The intervenors rely chiefly on the recent Supreme Court case of *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), for the proposition that, "[t]here is no cause of action against a defendant for fees [under section 1988] absent that defendant's liability for relief on the merits." *Id.* at 170, 105 S.Ct. at 3108. In *Graham*, the plaintiffs brought suit under section 1983 alleging deprivations of their federal rights as the result of the use of excessive force employed against them by state police officers during a raid and subsequent arrest. The plaintiffs' lawsuit sought money damages from defendant Commissioner of the Kentucky State Police "individually and as Commissioner" but only attorneys' fees from the Commonwealth of Kentucky. The district court dismissed the State of Kentucky as a party to the plaintiffs' suit due to its Eleventh Amendment immunity from damages actions brought in federal court, *see Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); but after the action was eventually settled during trial, the plaintiffs nevertheless moved to recover their attorneys' fees from the state. The district court awarded the plaintiffs fees and the Sixth Circuit affirmed. *Graham v. Wilson*, 742 F.2d 1455 (6th Cir.1984). The Supreme Court granted certiorari and reversed, holding that section 1988 did not permit fee liability to be imposed upon a governmental entity where the prevailing plaintiff sued governmental employees in their personal capacity only. Kentucky's constitutional immunity aside, the Court

reasoned that to permit the plaintiffs in *Graham* to recover fees against the State as a result of prevailing against state employees in their personal capacity would also destroy the important distinction between personal and public capacity suits maintainable against governmental officials.[12] Such a result would be contrary to the Court's earlier holding in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that *respondeat superior* liability is not available to plaintiffs in actions brought under 42 U.S.C. § 1983. From the outset, the Eleventh Amendment prevented Kentucky from being a proper party to the plaintiffs' lawsuit; consequently, an award of section 1988 fees in favor of the plaintiffs and against the state was impermissible. As the Court concluded, "[t]hat a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone a non-party." *Graham*, 473 U.S. at 168, 105 S.Ct. at 3106.

The intervenors seek to analogize their position in the instant case to that of the state of Kentucky in *Graham*, arguing that they should not have section 1988 fees assessed against them, as they, like Kentucky, were found not to be responsible for the relief sought and eventually obtained by the prevailing plaintiffs. In addition, the intervenors argue that *Graham* should be read broadly for the proposition that, so far as fee liability pursuant to section 1988 is concerned, "... liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant."[13] *Id.*

---

**12.** On this very point, the Court in *Graham* stated:

> Section 1988 does not guarantee that lawyers will recover fees anytime their clients sue a government official in his personal capacity, with the governmental entity the ultimate insurer.

473 U.S. at 168, 105 S.Ct. at 3107.

**13.** The intervenors' briefs are replete with quotations from *Graham* to support the notion that a party's liability for relief is an absolute prerequisite to liability for section 1988 fees. For example, the intervenors rely heavily upon the

following language: "[I]t is clear that the logical place to look for recovery of fees is to the losing party—the party legally responsible for relief on the merits." *Id.* at 164, 105 S.Ct. at 3104. Of course, in *Graham*, as the result of the operation of the Eleventh Amendment, there was only one party to whom the plaintiffs could legitimately look for fees and that party, sued in his personal capacity, also happened to be the party from whom the plaintiffs ultimately did obtain relief—albeit not in the form of a formal judgment but rather in the form of a settlement. *See Hewitt v. Helms*, —— U.S. ——, 107 S.Ct.

at 165, 105 S.Ct. at 3105. We are unpersuaded both that *Graham* is sufficiently analogous to the instant case to shield the intervenors from fee liability and that the Supreme Court's holding in *Graham* is properly applicable to cases, such as this one, that are factually, and in other material respects, distinguishable.[14]

Turning first to the intervenors' assertion that their status in the present action is directly analogous to the status of Kentucky in *Graham*, we concur in the conclusion of the district court that *Graham* does not preclude an award of fees against the intervenors in these circumstances. Significantly, the plaintiffs in *Graham* sought and were initially awarded fees from an entity, the State of Kentucky, which was immunized by the Eleventh Amendment from such fee awards and which, subsequent to its dismissal from the lawsuit, was a non-party to the substantive litigation. The intervenors, on the other hand, were not only actively participating parties in the plaintiffs' challenge of the abortion statute, but were parties whose presence in the lawsuit was both voluntary and self-initiated. The decision by the intervenors to participate as full-fledged parties thus clearly distinguishes, in a critical respect,

their situation from that of the State of Kentucky, in that the State refused to waive its Eleventh Amendment immunity by voluntarily joining the lawsuit and consenting to defend state employees sued in their personal capacity. The intervenors may therefore fairly be charged with the consequences of choosing to proceed as intervening defendants rather than as *amici*, a status that would have permitted them to present their legal arguments to the court while protecting them from any liability for fees, *cf. League of Women Voters of California v. F.C.C.*, 798 F.2d 1255, 1260 (9th Cir.1986), but which admittedly would have circumscribed their ability to affect the course and substance of the litigation. *See e.g.,* Fed.R.App.P. 29.

Similarly unavailing is the intervenors' attempt to characterize *Graham* as a definitive pronouncement by the Supreme Court on the question of intervenor fee liability under section 1988. In authoring the Court's unanimous decision in *Graham*, Justice Marshall began his opinion as follows:

> The question presented is whether 42 U.S.C. § 1988 allows attorneys' fees to be recovered from a governmental entity

2672, 2676, 96 L.Ed.2d 654 (1987) (it is settled law that relief need not be judicially decreed in order to qualify a party as "prevailing" and justify a fee award under section 1988); *see also Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). Thus, the above-quoted language, "the party legally responsible for relief on the merits," refers specifically to the "losing party" in *Graham*—the only party from whom the plaintiffs could properly seek section 1988 fees given Kentucky's constitutional immunity from liability for such awards. The language relied upon by the intervenors is therefore specific to the facts of *Graham* and is not fairly interpreted as a definitive statement on section 1988 liability in factually distinguishable cases.

We find similarly unpersuasive the intervenors' reliance on the language from *Graham* referred to in the text accompanying this footnote. A party found not to have been defeated by plaintiffs, either because of the type of legal immunity at work in *Graham* or because liability on the merits could not be established, is, by the express language of section 1988, not a party properly liable for a prevailing party's attorneys' fees. As we have emphasized, however, the intervenors were shielded by no immunity from

fee liability and they were thoroughly unsuccessful in staving off the plaintiffs' challenge to the abortion statute.

14. For example, the intervenors assert that in *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Supreme Court foreclosed intervenor liability for section 1988 fees when the Court observed that the statute's legislative history referred only to cases where "the party to whom fees were awarded had established the liability of the opposing party...." *Id.* at 757, 100 S.Ct. at 1989. *Hanrahan,* however, overturned a decision of this court (i) reversing a directed verdict for defendants in a civil rights suit, (ii) remanding the case for a new trial, and (iii) awarding the plaintiffs section 1988 fees. The Supreme Court held that because our decision only entitled the plaintiffs to a new trial, any determination of whether they had in fact "prevailed", and hence whether an award of section 1988 fees could be awarded, was premature. The facts of the instant case are, of course, different in one crucial respect— the plaintiffs here have unquestionably "prevailed" time and again against the legal arguments and procedural obstacles posed by the intervenors.

when a plaintiff sues governmental employees only in their personal capacities and prevails.

473 U.S. at 161, 105 S.Ct. at 3103. We thus decline to read *Graham* as standing for a holding broader than the Court's own stated intention in deciding the case. The intervenors are attempting to stretch *Graham* to answer a question the case simply did not raise. One can comb *Graham* tirelessly without discovering a single explicit or implicit reference to the issue of intervening parties' liability for section 1988 fee awards; *Graham* merely explores the narrow issue of a government entity's liability for section 1988 fees when a prevailing civil rights plaintiff, as the result of the operation of the Eleventh Amendment, has successfully sued state officials but only in their personal capacity. *Glover v. Alabama,* 734 F.2d 691 (11th Cir.1984), *vacated,* 474 U.S. 806, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), *aff'd in part, vacated and remanded in part,* 776 F.2d 964 (11th Cir. 1985), a case also relied upon by the intervenors, is distinguishable from the instant case for precisely the same reason.[15]

The plaintiffs, too, refer us to case law which they contend supports their contention that intervening defendants, regardless of the fact that they are not directly responsible for any section 1983 violations, can be assessed section 1988 fees. In *Moten v. Bricklayers, Masons and Plasterers,* 543 F.2d 224, 239 (D.C.Cir.1976), for example, the District of Columbia Circuit refused to draw a distinction between defendants and intervening defendants for purposes of fee liability under the fee-shifting provision of Title VII, 42 U.S.C. § 2000e–5(k).[16] In fact, the court eventually allowed an award of attorneys' fees against an entity, a professional association, which had not even sought to inter-

vene in the initial proceedings in the district court but which later attempted to become a party-appellant by filing an appeal which the court of appeals ultimately dismissed for want of jurisdiction. The court in *Moten* explained its fee award against the would-be intervenor by reference to two factors: first, the extent to which the prevailing district court plaintiffs were compelled on appeal to expend additional effort and financial resources in order to defend their previously reached, hard-won settlement agreement; and second, the fact that the would-be intervenor had sought, voluntarily and without invitation, to participate in the case at the appellate stage. *Id.* at 239. It was for these same reasons that the district court in this case awarded section 1988 fees against the intervenors. However, not only were the intervenors in the instant case successful in their attempt to intervene at the very outset of this lawsuit, but as fullfledged and fully participating parties, the intervenors have been responsible for far more than causing the plaintiffs to devote a mere six pages of their appellate brief to the intervenors' legal arguments, as was the case in *Moten. Id.* Even more significant though, is the fact that unlike the would-be intervenors in *Moten,* the intervenors in this case were thoroughly beaten by the plaintiffs *on the merits* of their legal arguments in numerous proceedings both in the district court and on two separate occasions before this court.

*Haycraft v. Hollenbach,* 606 F.2d 128 (6th Cir.1979) (per curiam), also buttresses the plaintiffs' claim to fees from intervenors and is very similar to the case at bar. In *Haycraft,* a state court judge intervened in a school desegregation case to present an alternative integration plan that

---

**15.** Other cases cited by the intervenors for the proposition that fee liability and liability on the merits are inextricably bound are similarly distinguishable from the case at bar. Specifically, we find the intervenors' references to *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), and *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), inapposite. Both cases deal extensively with an issue not remotely suggested by the instant case, common law immunity

from fee liability, and neither case ever once raises the issue of intervenor liability for statutory attorneys' fees.

**16.** In considering awards of attorneys' fees, we may consult related attorneys' fees statutes and case law. *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983).

would have prevented the plaintiffs from realizing the full relief that they had sought and ultimately obtained in bringing suit. The Sixth Circuit upheld the district court's award of attorneys' fees against the intervenor-judge under 20 U.S.C. § 1617 (since repealed), the fee-shifting provision of the Emergency School Aid Act of 1972, which provided for discretionary awards of attorneys' fees to prevailing parties in school desegregation cases. Although the intervenor-judge was not a named defendant, had no judgment entered against him personally, and could not himself have been found liable for any relief on the merits, the court of appeals held that the plaintiffs had prevailed against him by defeating his alternate desegregation plan, the submission of which "imposed a substantial barrier to the realization of the full constitutional rights of appellees." *Id.* at 132. The circumstances of *Haycraft* are indeed similar to those of the instant case;[17] however, as was true in *Moten*, we believe the pervasive role the intervenors played throughout the course of this lawsuit renders them even more deserving candidates for section 1988 fee liability than the intervening judge in *Haycraft* whose

participation in that lawsuit was, by contrast, short-lived and relatively limited in scope.

Finally, there is the virtually identical case of *Akron Center for Reproductive Health v. City of Akron*, 604 F.Supp. 1268 (N.D.Ohio 1984), where, upon remand from the Supreme Court, the district court assessed section 1988 fees against private, intervening defendants[18] who sought unsuccessfully to defend a local ordinance regulating abortions.[19] The intervening defendants in *Akron* were every bit as vigorous and active in defense of the *Akron* ordinance as the intervenors in this case were in defending the Illinois statute, and, similarly, the plaintiffs in *Akron* prevailed on many of the issues on which the intervening defendants had participated in the lawsuit. The district court's decision in *Akron* rested its award of section 1988 fees to the plaintiffs on two factors: the voluntary nature of the intervening defendants' participation in the action and the extent to which the intervenors "... contributed to the effort required of the plaintiffs to substantiate their position in Court."[20] *Id.* at 1273. Significantly, the

17. The intervenors would distinguish *Haycraft* from the instant case on two grounds: first, the intervening defendant in that case was, as a state court judge, a "state actor" for purposes of section 1983 liability; and second, the Sixth Circuit concluded that, unlike here, the intervenor-judge had acted in bad faith. While conceding these factual circumstances, we note that the Sixth Circuit's decision in *Haycraft* attached no special significance to the fact that the intervening defendant happened to be a state official. In fact, the court's decision made clear that its award of section 1988 fees could be independently justified by either the fact that the plaintiffs were prevailing parties *or* by the fact that the intervenor-judge was found to have proceeded in bad faith.

18. Here too, the intervenors urge us to discount the significance of the *Akron* court's award of fees against the intervening defendants. The intervenors rely on two other district court decisions, both from the Sixth Circuit and both pre-dating *Akron*, which refused to assess section 1988 fees against the intervenors despite the Sixth Circuit's prior decision in *Haycraft*. See *Wolfe v. Stumbo*, No. C-80-0285 (W.D.Kentucky December 15, 1983); *Planned Parenthood of Memphis v. Alexander*, No. 78-2310 (W.D. Tenn. December 23, 1981). We decline the invi-

tation to so distinguish *Akron*. *Wolfe* and *Planned Parenthood* attempt to distance themselves from *Haycraft* by pointing to the fact that in *Haycraft* the intervenor was a state official who was found to have intervened in bad faith. As we have already discussed, however, the fact that the plaintiffs in *Haycraft* prevailed against the intervenor, as the plaintiffs in *Akron* did against the intervening defendants there, provided the primary justification for the Sixth Circuit's decision to uphold the fee award. Similarly, as did the Sixth Circuit in *Haycraft*, the district court in *Akron* chose to award fees against the intervenors as the result of the extra effort which the ultimately prevailing parties were forced to expend in order to substantiate their legal position. *Akron*, in our view, is thus more faithful to *Haycraft* and hence more persuasive than either of the district court cases cited by the intervenors.

19. The intervenors in *Akron* sought to intervene to protect the very same interests asserted by the intervenors in this case—*i.e.*, the rights of yet unborn fetuses and the rights of parents of minor children of childbearing age.

20. We refuse to accept the intervenors' argument that the district court's imposition of sec-

district court in *Akron* relied specifically on *Haycraft* to reject the plaintiffs' assertion that the fact that the intervening defendants were not liable for any violations of the plaintiffs' constitutional rights automatically precluded an imposition of section 1988 fees. While *Akron* is, of course, not controlling authority, the intervenors have failed to posit a single convincing argument for distinguishing that case from the case before us; in both instances, for reasons we have repeatedly stated, the assessment of section 1988 fees against the intervening defendants is entirely consistent with and, more importantly, in furtherance of the intent of Congress in enacting the statute.[21]

Having located nothing in either the express language of section 1988 or in its legislative history nor pertinent case law conclusively linking a party's liability for substantive relief with liability for fees (*see* n. 11 and n. 13, *supra* ), we agree with the district court that the fact that the intervenors were found to have themselves actually violated none of the plaintiffs' constitutional rights does not *require* that they be immune from fee liability pursuant to section 1988. Accordingly, the district court

did not abuse its statutory discretion by awarding attorneys' fees to the plaintiffs for work performed in vigorously defending their civil rights before this court and the district court. The fee award is upheld in its entirety.

### B. The Intervenors' Liability for Section 1988 Fees in the Supreme Court

In addition to contesting their liability for section 1988 fees incurred before the district court and the court of appeals, intervenors Diamond and Williams also separately challenge their liability for fees in connection with the Supreme Court phase of this litigation.[22] The intervenors' central argument on this score is the same one we have just rejected with respect to fee liability in the lower federal courts—*i.e.,* that private intervenor status insulates a party entirely from liability for attorneys' fees under section 1988. We thus turn to the intervenors' second argument, that section 1988 explicitly permits fee awards only "as part of the costs," and because the Supreme Court failed to award the plaintiffs any costs no award of fees should have been allowed by the district court.

---

tion 1988 fees, based in part upon the extent to which the intervenors put plaintiffs to greater effort and expense, suggests, in effect, that the plaintiffs should have been entitled to proceed unopposed with their claims. Rather, we believe that in employing such reasoning the district court is simply underscoring the fact that the intervenors, after interjecting their own additional legal theories and arguments into the lawsuit, were defeated by plaintiffs nevertheless.

**21.** The plaintiffs cite two other district court cases, *Decker v. United States Dept. of Labor,* 564 F.Supp. 1273 (E.D.Wis.1983) and *Vulcan Society of Westchester County, Inc. v. Fire Department of the City of White Plains,* 533 F.Supp. 1054 (S.D. N.Y.1982), in support of the intervenors' fee liability. While instructive and consistent with the reasoning of plaintiffs' other cases, we find these two lawsuits less persuasive because in each the intervening defendants ordered to pay section 1988 fees were arguably more culpable parties than are the intervenors in the instant case.

**22.** The intervenors also challenge the propriety of holding the estate of Dr. Jasper Williams jointly liable for the plaintiffs' Supreme Court fees since Williams died in a plane crash prior to the Supreme Court's grant of review in this

case. While Williams' death did precede the Court's decision to hear the appeal, both the notice of appeal and the jurisdictional statement filed with the Court bore the name of Dr. Williams and asserted his interests as giving rise, in part, to the controversy before the Court. Supreme Court Rule 40 deals with the substitution of deceased parties and permits the deceased's proper representative or the opposing party to move to have another party substituted for the deceased. As the Supreme Court noted in its decision dismissing the appeal for want of jurisdiction, no such formal substitution was made here, *Diamond v. Charles,* 476 U.S. 54, 106 S.Ct. 1697, 1701 n. 4, 90 L.Ed.2d 48 (1986). Intervenors' counsel, Americans United for Life Legal Defense Fund, did attempt to substitute itself for Dr. Williams but was found to be an improper party for such a purpose. We thus concur in the district court's decision to hold the estate of Dr. Williams jointly liable for the fees incurred in the Supreme Court by the plaintiffs. A procedural avenue was afforded Williams' estate to escape liability from an adverse decision by the Supreme Court; so far as we are able to discern, the estate has furnished no explanation as to why it failed to perfect Williams' substitution. Under these circumstances we see no reason why Williams' estate should not be held liable.

We must again commence our analysis with a review of the pertinent statutory language. For these purposes, the relevant language of section 1988 permits a district court to award the prevailing party "a reasonable attorney's fee ... *as part of the costs.*" (Emphasis added). The intervenors assert that because the Supreme Court's disposition of their appeal did not include an award of costs to the plaintiffs, the statutory prerequisite for an award of fees is absent. The plaintiffs, on the other hand, reassert the position that their status as a prevailing party, and not the existence of an award of costs, is dispositive of their entitlement to fees under section 1988. While it is true that the Supreme Court did not award costs to the plaintiffs, the Supreme Court Rule governing costs makes no provision for costs in cases such as this where the Court, after briefing and argument, dismisses an appeal for want of jurisdiction.[23] It appears that a claim of this nature has not been previously raised before the Court; consequently, we are faced with the novel question: Is an award of attorneys' fees pursuant to section 1988 precluded in these circumstances by the absence of an award of costs by the Supreme Court? We are persuaded that the answer to this question is "no".

Notwithstanding the intervenors' persistent assertions to the contrary, our reading of the case law proffered by the parties, in addition to our own research, simply does not support the proposition that an award of section 1988 fees by a district court for work done before the Supreme Court can be ordered *only* when the Supreme Court has itself first seen fit to order the losing side to pay costs. In *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), upon which the intervenors rely initially in support of their argument, the Supreme Court merely held that attorneys' fees could properly be categorized as "costs," and as such, were not subject to Eleventh Amendment immunity, which would ordinarily bar monetary damage awards obtained in federal courts against states sued as defendants in civil rights actions. Acknowledgment by the Court that Congress had the authority to characterize fee awards as an item of costs, however, is significantly different from a pronouncement that a separate award of costs is an absolute prerequisite to an award of attorneys' fees under section 1988; *Hutto* nowhere purports to make such a pronouncement.

Similarly, the intervenors' primary reliance in this regard upon *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), is misplaced. *Marek,* too, was a civil rights suit brought pursuant to section 1983 and involved police officers who, in responding to a domestic disturbance call, shot and killed the plaintiff's adult son. Prior to trial, the defendants made a settlement offer of $100,000, which included costs and attorneys' fees, but which the decedent's parents declined. As a consequence, the case proceeded to trial and the jury ultimately returned a verdict favorable to the plaintiff, awarding $5,000 on a state tort-law claim, $52,000 for the section 1983 violation, and $3,000 as punitive damages. The plaintiff subsequently filed a motion for attorneys' fees under section 1988 seeking to be reimbursed for fees paid to counsel, including fees for work performed *subsequent* to the defendants' rejected settlement offer. Pursuant to Federal Rule of Civil Procedure 68,[24] the district court denied the plaintiff's motion for fees, ruling that the term "costs," as employed in the Rule, included attorneys' fees and thus pre-

---

**23.** Supreme Court Rule 50 governs awards of costs in the Supreme Court but provides for costs to be awarded only when the Court expressly affirms, reverses or vacates a judgment of a lower court. Entitled "Costs," Rule 50 states in relevant part:

.1. In a case of affirmance of any judgment or decree by this Court, costs shall be paid by appellant or petitioner, unless otherwise ordered by the Court.

.2. In a case of reversal or vacating of any judgment or decree by this Court, costs shall be allowed to appellant or petitioner, unless otherwise ordered by the Court.

**24.** Federal Rule of Civil Procedure 68 provides that if a timely pretrial offer of settlement is not accepted and the judgment finally obtained by the offeree is not more favorable than the offer he refused to accept, he must pay the *"costs"* incurred after the making of the offer.

cluded the plaintiff from recovering fees incurred after the settlement offer was spurned. *Chesny v. Marek*, 547 F.Supp. 542 (N.D.Ill.1982). We reversed the district court, reasoning that its decision would place civil rights plaintiffs and counsel in a "predicament" that "cuts against the grain of § 1988." *Chesny v. Marek*, 720 F.2d 474, 478–79. The plaintiffs' attorneys, we explained, would be forced to think very carefully before rejecting even an inadequate offer, and might be deterred from bringing good faith actions because of the prospect of losing the right to attorneys' fees if a settlement offer more favorable than the ultimate recovery were rejected. *Id.* Consequently, we concluded that the legislators who had enacted section 1988 would not have wanted its effectiveness "blunted" due to the interpretation of the interplay of section 1988 and Rule 68 adopted by the district court. *Id.*

The Supreme Court, however, ultimately sustained the district court's synthesis of Rule 68 and section 1988, finding it more consistent with the pro-settlement policy of Rule 68. The Court narrowly framed the relevant question at issue in *Marek* as: "[W]hether the term 'costs' in Rule 68 includes attorney's fees awardable under 42 U.S.C. § 1988." 473 U.S. at 7, 105 S.Ct. at 3016. Despite the absence of a precise definition of the term "costs" in Rule 68 itself, the Court held:

> In this setting, given the importance of "costs" to the Rule, it is very unlikely that this omission was mere oversight; on the contrary, the most reasonable inference is that the term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant

substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 "costs." Thus, absent Congressional expressions to the contrary, where the underlying statute defines "costs" to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68.

Here, respondents sued under 42 U.S. C. § 1983. Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, a prevailing party in a § 1983 action may be awarded attorney's fees "as part of the costs." Since Congress expressly included attorney's fees as "costs" available to a plaintiff in a § 1983 suit, such fees are subject to the cost-shifting provision of Rule 68. This "plain meaning" interpretation of the interplay between Rule 68 and § 1988 is the only construction that gives meaning to each word in both Rule 68 and § 1988.

473 U.S. at 9, 105 S.Ct. at 3017. (Citations omitted).

Properly understood, *Marek* stands for the proposition that in the absence of any internal definition of "costs" in Rule 68, the term "costs" should be construed to include attorneys' fees authorized under section 1988.[25] The Court reasoned that if fees were excluded from the costs limitations imposed by Rule 68, attorneys representing civil rights plaintiffs would have little or no incentive to consider a Rule 68 settlement offer because, regardless of the eventual outcome of the case at trial, their fees for post-offer legal work would be recoverable. *Id.* at 10, 105 S.Ct. at 3017–18. The instant case, however, is clearly

---

**25.** Both the district court in awarding Supreme Court fees and the plaintiffs in their briefs stress the fact that unlike Federal Rule of Civil Procedure 68, Supreme Court Rule 50 does contain an internal definition of "costs" and that such an internal definition is "critical." (Mem. Op., December 5, 1986 at p. 4 n. 8). According to the plaintiffs, the fact that Supreme Court Rule 50 expressly limits its definition of "costs" to include such traditional items as printing of briefs and service of process renders it inappropriate to engraft attorneys' fees onto that definition. In support of their argument, the plaintiffs point to a footnote in *Marek* which states in

effect that when examining a statute that is alleged to be a substantive source of attorneys' fees, it is incumbent upon the court to rely upon the definitions, if any, set forth in that statute. 473 U.S. at 9–10 n. 2, 105 S.Ct. at 3017–18 n. 2; *see also Kelley v. Metropolitan County Board of Education*, 773 F.2d 677, 681 n. 5 (6th Cir.1985) (en banc). The flaw in the plaintiffs' argument, and in the district court's partial reliance thereon, lies in the fact that it is section 1988, *not* Supreme Court Rule 50, that is the substantive source of attorneys' fees at issue here and there is no disputing that the language of section 1988 ties attorneys' fees directly to an award of costs.

distinguishable from *Marek* inasmuch as a purported settlement of the case is not at issue and thus the operation of Rule 68 was never triggered. Unconstrained as we are in this case by any countervailing policy considerations counselling settlement, we see no reason to prevent a prevailing party in the Supreme Court from recovering section 1988 fees simply because the Supreme Court Rules neither affirmatively provide for nor prohibit an award of costs when a party succeeds in having an appeal dismissed on jurisdictional grounds.[26] That the Supreme Court Rules fail specifically to authorize an award of costs to those parties whose successful advocacy before the Court is not characterized by circumstances falling neatly within the interstices of everyday procedure is an insufficient justification for interpreting section 1988 in such a way as to force prevailing civil rights plaintiffs to themselves absorb the costs of defending lawsuits the appealing party lacked proper standing to bring. Such a result would stand as a formidable impediment to the full achievement of the important objectives section 1988 was conceived and enacted to further.

Accordingly, while we reserve judgment for the moment on the actual amount of Supreme Court fees the plaintiffs are entitled to, the district court's authority to render such an award, even in the absence of any award of costs by the Supreme Court, is sustained.[27]

---

**26.** The intervenors do not even concede that the plaintiffs were "prevailing parties" before the Supreme Court. According to the intervenors, "[t]he Court did not reach or resolve the underlying constitutional issues, and plaintiffs did not secure a determination from the Court that the challenged provisions were unconstitutional. By persuading the Court that intervenors lacked standing, plaintiffs did not gain any additional relief or benefit, but merely preserved the status quo." Reply Brief at 12. We fail to comprehend how the intervenors can seriously maintain that the plaintiffs did not prevail against them in the Supreme Court. Not only do the intervenors admit that the plaintiffs succeeded in persuading the Court that the intervenors lacked any legally cognizable interests entitling them to bring their appeal, but in preserving the "status quo" the plaintiffs succeeded in preserving their substantial victories over the numerous sections of the abortion law struck down in this court and the district court.

**27.** The plaintiffs have referred us to and succeeded in persuading the district court that the case of *Local 17, International Association of Heat and Frost Insulators and Asbestos Workers v. Young,* 775 F.2d 870 (7th Cir.1985), is analogous to the instant case. In *Local 17,* we upheld a district court's award of costs and fees to a party who had successfully opposed a petition to the Supreme Court for a writ of certiorari in a labor case. As is true in this case, the Supreme Court Rules make no provision for an award of costs to parties who successfully resist a petition for a writ of certiorari.

Our decision in *Local 17* was based largely on *Perkins v. Standard Oil Company of California,* 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970), which we characterized in our opinion, erroneously it now seems (*see infra*), as a case where the Supreme Court permitted the district court to award fees to a petitioner proceeding under the fees provision of the Clayton Act who sought reimbursement for fees incurred in successfully opposing a petition for certiorari. Although the district court and the court of appeals in *Perkins* both denied petitioner fees for work done before the Supreme Court on the grounds that the Supreme Court had not itself mentioned fees in either its decision in the case or in its mandate, the Supreme Court reversed and held that its own failure to consider the appropriateness of fees simply left the matter to the discretion of the district court. The plaintiffs assert that our willingness to permit an award of fees in *Local 17* should control our decision in the instant case. A thorough reading of both *Perkins* and *Local 17,* however, convinces us that, despite some superficial similarities, neither case is sufficiently analogous to dictate our decision here.

*Local 17* involved the narrow issue of whether a district court had authority to award attorneys' fees under section 102 of the Labor–Management Reporting and Disclosure Act for work performed resisting a petition for certiorari in the Supreme Court. In sharp contrast to section 1988, which provides that attorneys' fees may be awarded "as part of the costs," section 102 of the LMRDA broadly authorizes courts to grant those whose rights under the Act have been infringed "such relief ... as may be appropriate." 29 U.S.C. § 412. Thus, despite the fact that the plaintiff in *Local 17* received attorneys' fees for services not explicitly made compensable by the Supreme Court Rules, the statutory source of that award, section 102 of the LMRDA, contains significantly broader language susceptible to greater influence by equitable factors than the language employed in section 1988. Reliance by the plaintiffs on *Perkins* is similarly misplaced. That case, our own restatement of its facts in *Local 17* notwithstanding, did not involve the Supreme Court's affirmance of an award of attorneys' fees to a

C. *The First Amendment as a Bar Against an Award of Section 1988 Fees to the Intervenors*

■ Having decided that section 1988 authorizes district courts to award attorneys' fees against private intervening defendants and that the district court's award of Supreme Court fees to the plaintiff was similarly proper, we turn to the intervenors' constitutional challenge to their liability for fees.[28] The intervenors argue that the district court's award of more than $200,000 in attorneys' fees against them represents a retaliatory sanction that impermissibly infringes upon their ability to engage in advocacy through litigation, a form of political expression protected by the First Amendment.[29] In *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963), the Supreme Court held that state rules promulgated to regulate the legal profession and the solicitation of legal business unconstitutionally abridged the NAACP's right to associate for the purpose of advancing and expressing beliefs and ideas. *Id.* at 428–30, 83 S.Ct. at 335–36. Subsequent Supreme Court decisions have interpreted *Button* as establishing the principle that "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *In Re Primus*, 436 U.S. 412, 426, 98 S.Ct. 1893, 1901, 56 L.Ed.2d 417 (1978). It is upon these authorities that the intervenors assert that the district court's award of section 1988 fees against them is a punitive measure which operates as "a blatant restriction on [the] fundamental freedoms of association and expression." We find this argument far-fetched indeed.

Unlike *Button* and *Primus*, this lawsuit does not involve rules and regulations governing attorney conduct which place specific and admittedly severe restrictions on the ability of counsel to locate and recruit potential litigants.[30] Instead, at issue here is a statute which authorizes the payment of a successful civil rights litigant's attorneys' fees by the unsuccessful opposing party. Section 1988 does not interfere with an attorney's ability to associate with prospective clients and to advise them on the best course to take in seeking to vindicate their potentially significant constitutional claims; section 1988 simply provides an incentive for civil rights plaintiffs to bring lawsuits on their own and to insure thereby the continued enforcement of the civil rights laws. It is thus not accurate to characterize the reimbursement of prevailing civil rights plaintiffs for their attorneys' fees as

party who successfully resisted a writ of certiorari. Instead, the petitioner in *Perkins* was awarded fees for succeeding in obtaining reinstatement of a verdict that had been overturned in part by the court of appeals. *Perkins v. Standard Oil*, 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969). As a successful party before the Supreme Court, *Perkins* was thus entitled to costs pursuant to Supreme Court Rule 50, and, consequently, the issue of whether or not fees could be awarded in the absence of a party's eligibility for an award of costs was never addressed.

28. We agree both with the plaintiffs and the district court that, with respect to fees incurred before this court and the district court, the intervenors did not raise this argument with sufficient specificity before the district court and thus waived it for purposes of appellate review. However, the intervenors' First Amendment claim was timely and cogently presented to the district court with respect to the intervenors' liability for section 1988 fees incurred by the plaintiffs in the Supreme Court. As our analysis of this claim is identical in the case of both district court fee awards, we do not differentiate between the contested awards in the text of the opinion.

29. For a full exposition of this argument, *see e.g.,* Goldberger, *First Amendment Constraints on the Award of Attorney's Fees Against Civil Rights Defendant–Intervenors: The Dilemma of the Innocent Volunteer,* 47 Ohio St.L.J. 603 (1986).

30. The district court rejected the intervenors' First Amendment argument on the basis of the Supreme Court's ultimate finding in *Diamond v. Charles* that the intervenors lacked any judicially cognizable interest in defense of the abortion statute, 106 S.Ct. at 1700, and on the grounds that participation in the lawsuit as *amici curiae* would have satisfied their First Amendment right of access to the courts. Because our decision today finds nothing inconsistent between the right of access to the courts recognized in *Button* and *Primus* and section 1988, we need not discuss the district court's *ratio decidendi* on this issue as its decision seems to permit the conclusion that section 1988, in some circumstances, may indeed unconstitutionally chill the rights of civil rights defendants and intervening defendants.

a "sanction" or "penalty" on those who oppose such suits. While *Button* and *Primus* undeniably stand for the proposition that a right of access to the courts is guaranteed to those who seek to engage in litigation as a form of political expression, neither case suggests that such use of the judicial forum is entitled to be conducted free from both the inherent and statutorily imposed financial consequences of such activity.

Litigation is not purely speech, it is more; litigation is conduct which can and does impose considerable costs on the parties as well as upon the federal judiciary. Where, as here, Congress has determined that a particular class of litigants, civil rights plaintiffs, is deserving of a fee-shifting scheme to make them whole after incurring substantial expenses in vindicating their constitutional rights, we refuse to hold such a scheme violative of the First Amendment simply because it forces those who choose voluntarily to interject themselves into such lawsuits to think twice before engaging in battle.

### D. The Reasonableness of the District Court's Award of Supreme Court Fees and Costs

Appellate review of an award of attorneys' fees pursuant to section 1988 is very limited in scope, for the determination of such awards is generally left to the sound discretion of the district court. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Lightfoot v. Walker,* 826 F.2d 516, 520 (7th Cir.1987). Although due deference is owed a district court's assessment of fees and costs, the single most important criterion in evaluating the appropriateness of such awards is their "reasonableness." *See* 42 U.S.C. § 1988 (district court may allow prevailing party a "reasonable attorney's fee"); *see also Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939 (hours "reasonably expended" are compensable); *Gekas v. Attorney Registration and Disciplinary Commission,*

793 F.2d 846, 853 (7th Cir.1986). Accordingly, where the district court has ordered reimbursement for fees and costs that are objectively judged to have been unnecessary for the competent preparation of a case for trial or appeal, an abuse of discretion may be found. *Cf. Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984); *see also Bonner v. Coughlin,* 657 F.2d 931, 934–35 (7th Cir.1981).

The intervenors do not dispute that plaintiffs' counsel expended an aggregate of 926 hours in preparing for argument of their case before the Supreme Court. Rather, the intervenors complain that the number of attorney hours for which reimbursement is sought is, in certain respects, unreasonable and excessive. To the extent expressed below, we agree.

While we do not take issue with the district court's considerably more informed conclusion that appeal of this case to the Supreme Court required of the plaintiffs a "tremendous amount of additional work" (Mem.Op., December 5, 1986 at 10), we simply cannot justify as "reasonable" all of the time and effort which plaintiffs' counsel apparently expended in preparing for argument before the Court. In the nearly five years during which this case traveled back and forth between this court and the district court (proceedings characterized by a voluminous record including literally hundreds of motions, legal memoranda and other submissions), the plaintiffs incurred fees of slightly more than $200,000. In contrast, in just the fourteen or so months during which counsel for the plaintiffs were engaged in pre-argument preparation as well as preparation of supplemental, post-argument materials in the Supreme Court, plaintiffs' counsel logged 926 hours of billable time at a cost of roughly $111,750.00. While appreciative of the fact that prior to its dismissal on jurisdictional grounds this case figured to impact substantially on the national controversy surrounding abortion,[31] we are unable to es-

---

**31.** Arguments before the Supreme Court in this case and in the case of *Thornburg v. ACOG,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986), were heard on the same day and it was in the

*amicus* brief filed by the government in these cases that the Solicitor General recommended that the Court reconsider its holding in the

cape the conclusion that the extent of the plaintiffs' pre-argument preparation, and consequently the number of hours expended thereon, was, in several respects, excessive. In this connection, we find the First Circuit's opinion in *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984), to be persuasive.

*Grendel's Den* addressed the reasonableness of a largely unsubstantiated section 1988 fee petition submitted by counsel in a First Amendment case that had been litigated all the way to the Supreme Court. Recognizing the difficulty in calculating a reasonable attorneys' fee award where the petitioner had failed to submit reliable documentation, the First Circuit lowered the award of fees made by the district court and also found that even assuming petitioner's counsel had in fact expended all of the hours claimed, such an expenditure of time and effort constituted unreasonable preparation. The standard of service to be rendered and compensated in cases such as this is not one of perfection, the First Circuit explained; rather, "a litigant is entitled to attorney's fees under 42 U.S.C. § 1988 for an effective and completely competitive representation but not one of supererogation." *Id.* at 953–54. No doubt the line between ample preparation and excessive preparation is, at the margin, a fine one; the facts of this case, however, do not in our opinion present the close case.

We have carefully reviewed the contemporaneous time records submitted by plaintiffs' counsel and although these exhibits make a precise accounting of time impossible, there are two specific areas in which the preparation resorted to by counsel was, in our view, in excess of what is reasonable under the circumstances. The first area of concern involves the amount of time devoted by plaintiffs' counsel to reviewing and re-reviewing, revising and re-revising their briefs and other submissions. While our

calculations indicate that fewer hours were spent on these tasks than the calculations proffered by the intervenors (180 hours versus 265 hours),[32] the fact remains that the inevitable product of assigning six separate experts to edit and fine-tune each of the plaintiffs' briefs is, to some degree, an excessive and unnecessary duplication of time and effort. We do not mean in any way to underestimate the importance of careful proofreading and thoughtful editing, but there comes a time at which such endeavors reach a point of diminishing returns, and it is at that point where shifting the cost of such activity is inappropriate. The point was reached and exceeded here. We believe 150 hours (equivalent to 15 ten-hour days) should have afforded more than ample time for plaintiffs' counsel to perform editorial tasks and add the "finishing touches" to their briefs and supplemental submissions. Consequently, we disallow 30 hours of pre-argument preparation at an average cost of $122.50 per hour[33] or a total of $3,675.

Our second area of concern involves the holding of mock oral arguments (so-called "moot" arguments) by plaintiffs' counsel in New York and Seattle as well as in Chicago. The plaintiffs make no attempt to explain why conference calls, a method of communication used frequently and effectively in connection with other facets of their case preparation, would not have allowed for equally productive "moot" arguments of the case. While parties are undeniably entitled to solicit and to engage the services of legal experts the world over, section 1988's attorneys' fee provision does not require that even the excessive costs incurred in securing such consultations be charged to the ultimately nonprevailing party. The holding of in-person "moots" on both the east and west coasts, in addition to the one held in Chicago, resulted not

---

landmark decision of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

**32.** Although it is literally impossible to determine from the time sheets and the affidavits submitted by plaintiffs' counsel exactly how much time they spent proofreading, editing and revising, our best calculation (no such calcula-

tion appears in the district court's decision) is that approximately 180 hours were expended by counsel on such tasks.

**33.** The rate of $122.50 per hour represents the reasonable average hourly rate, as found by the district court, of the six attorneys retained by the plaintiffs.

only in excessive expenditures but is precisely the sort of "supererogation" warned against and rejected by the First Circuit in *Grendel's Den.* If the "reasonable attorney's fee" limitation imposed by section 1988 is to mean anything, lines, admittedly difficult and subjective ones, must be drawn somewhere; we do not think it overly harsh to draw such a line here. We therefore reduce the district court's award by an additional $1,876.75, the claimed cost of airfare and related expenses in Seattle and New York for Ms. Connell and Mr. Carey.

Aware as we are of the sound rationale for customarily deferring to the fee awards of district courts, such routine deference seems less justified when fees incurred in connection with appellate work, an aspect of legal practice with which *we* are intimately familiar, are in dispute. Furthermore, putting to one side the issue of the proper degree of deference due district court fee determinations, it makes no sense in a case such as this, which has already consumed in excess of seven years, to remand the case to the district court for further parsing of dollars resulting in the expenditure of even more time and money. *See e.g., Grendel's Den,* 749 F.2d at 951; *Copeland v. Marshall,* 641 F.2d 880, 901 (D.C.Cir.1980) (en banc). As the Supreme Court noted sensibly in *Hensley,* "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437, 103 S.Ct. at 1941. Accordingly, in light of our finding that certain hours and costs claimed by the plaintiffs are in excess of what is reasonable,[34] this court reduces the district court's award of Supreme Court fees to the plaintiffs by $5,881.75, yielding a final award of $105,896.76. We believe this to be a reasonable fee, and it is only a reasonable fee to which section 1988 entitles prevailing plaintiffs.

---

34. We note also the unreasonableness of the plaintiffs' attempting to shift the cost of three nights' lodging in Washington for Mr. Carey, at $165 per night, in connection with the argument of this case before the Supreme Court. *See Grendel's Den,* 749 F.2d at 957 (cost of only one

### III. CONCLUSION

In summary, we hold that in the unusual circumstances presented by this case, an award of attorneys' fees against private intervening defendants is permitted pursuant to section 1988 and, similarly, that the failure of the Supreme Court to make an explicit award of costs to the plaintiffs in connection with the argument of their case before the Court does not bar an award of Supreme Court fees against the intervenors. Furthermore, we find totally unpersuasive the intervenors' argument that section 1988 runs afoul of the First Amendment by requiring defendants in civil rights suits to reimburse prevailing plaintiffs for legal fees reasonably expended in the course of litigation. Finally, we modify the fee award made to the plaintiffs by the district court, reducing the award by $5,881.75 to reflect our belief that certain of the hours and expenses claimed by plaintiffs' counsel were, as discussed, unreasonable and excessive.

For the foregoing reasons, the decision of the district court is

AFFIRMED AS MODIFIED.

MANION, Circuit Judge, dissenting.

I respectfully dissent. A court may award attorneys' fees under 42 U.S.C. § 1988 only to "prevailing parties." The majority holds that the plaintiffs "prevailed" against the intervening defendants "notwithstanding the fact that the intervenors were not and could not themselves have been found guilty of violations of the plaintiffs' constitutional rights...." In so holding, the majority thoroughly discusses, but does not find controlling, cases holding that § 1988 fee awards against a defendant are inappropriate absent the defendant's liability on the underlying civil rights claims. I disagree.

In *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the

---

night's stay in Washington for argument before Supreme Court properly assessed against defendants). The district court's award is thus further reduced by the cost of these additional two nights' lodgings, $330.

Court held that § 1988's fee-shifting provisions must be applied against the "pre-existing background of substantive liability rules." *Id.* at 171, 105 S.Ct. at 3108. "Section 1988 simply does not create fee liability where merits liability is nonexistent." *Id.* at 168, 105 S.Ct. at 3107. The fact that a plaintiff may prevail on the merits against one party does not entitle him to receive attorneys' fees as a "prevailing party" from other parties who were not liable to plaintiff on the merits. *Id.; see also Annunziato v. The Gan, Inc.,* 744 F.2d 244, 249–53 (2d Cir.1984).

The majority's holding is also inconsistent with *Hewitt v. Helms,* — U.S. —, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). In *Helms,* the Court held that "moral victories" do not entitle a person to fees as a prevailing party. To "prevail", a party must receive some relief, either through a judgment or otherwise, *"which affects the behavior of the defendant towards the plaintiff."* 107 S.Ct. at 2676 (emphasis in original). Here, the only "relief" plaintiffs received with respect to the intervenors was the knowledge that the federal courts disagreed with the intervenors' views concerning the constitutionality of the Illinois abortion statute. This is insufficient to allow them to collect fees as "prevailing parties." In fact, plaintiffs here present a much less compelling case than that presented in *Hewitt v. Helms.* In *Helms,* the plaintiff established that the defendants violated his constitutional rights. Despite this, the Supreme Court completely denied the plaintiff attorneys' fees; the defendants had avoided liability because they were immune from damages and because the plaintiff's injunction request was rendered moot by the plaintiff's release from prison. If the plaintiff in *Helms* was denied attorneys' fees despite his establishing as a "private attorney general" that the defendants violated his constitutional rights, it is difficult to see how plaintiffs in the present case can obtain fees against intervenors who did not violate any of plaintiffs' rights and were not liable on the merits.

In upholding the district court's award of fees, the majority relies primarily upon the fact that intervenors voluntarily entered the litigation and that their presence increased the cost of litigation to plaintiffs. These facts, however, do not make the intervenors liable to plaintiffs on plaintiffs' 42 U.S.C. § 1983 claims. *See Annunziato,* 744 F.2d at 253–54 ("Since a party's liability under § 1983 depends upon its alleged unconstitutional activities *giving rise* to the litigation, [the non-state actor defendant's] *post facto* defense of this lawsuit … cannot form a proper basis for … fee liability under § 1988.") (emphasis in original). Moreover, neither of these facts takes this case from under the rule applied in both *Graham* and *Helms:* the award of attorneys' fees against a particular defendant under § 1988 is governed by whether the plaintiff prevails against that particular defendant on the underlying § 1983 claim. Section 1988 simply does not create an independent federal cause of action for attorneys' fees.

Finally, plaintiffs are not without protection from intervenors. Many potential intervenors will not be able to establish standing absent their own liability on the merits. Admittedly, many intervenors may be able to establish standing even though they may not be subject to liability under § 1983 (e.g., employees who may intervene to challenge or to uphold the adoption of an affirmative action plan) or, as in the present case, intervenors may be mistakenly permitted to litigate despite their lack of standing. However, neither of these groups of intervenors are engaging in activities that violate the civil rights laws. Furthermore, should such intervenors litigate in bad faith, vexatiously, or unreasonably, other litigants are adequately protected without having to resort to § 1988. See, e.g., Fed.R.Civ.P. 11; 28 U.S.C. § 1927.

In short, to "prevail" against a particular defendant under § 1988, a party must "prevail" on the underlying civil rights claim against that particular defendant. Plaintiffs could not and did not prevail against the intervening defendants on their underlying civil rights claim. As such, it was inappropriate for the district court to assess attorneys' fees against the intervening

defendants under § 1988. I would reverse the decision of the district court.