Susanne LITTLEFIELD, Plaintiff,

v.

Wally MACK, Santa Maria Realty and
Malcolm McGuffey, Defendant.

and

State Farm General Insurance Company,
Garnishee Defendant.

No. 88 C 9803.

United States District Court,
N.D. Illinois, E.D.

Feb. 6, 1992 and April 1, 1992.

Aram A. Hartunian, Steven P. Schneck, Hartunian, Futterman & Howard, Chtd., Chicago, Ill., for plaintiff.

Richard H. Hoffman, Querrey & Harrow, Ltd., John T. Harris, James T. Elsesser & Associates, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Susanne Littlefield ("Littlefield"), who is white, sued Malcolm McGuffey, also known as Wally Mack ("Mack") among other persona, claiming he denied her rental housing and harassed and intimidated her because her boyfriend, the father of her daughter, is black. She sued Mack for violation of the civil rights laws and the Fair Housing Act under 42 U.S.C. §§ 1982, 3604, 3613, 3617, and for intentional infliction of emotional distress under Illinois common law. On July 26, 1990, a jury found for Littlefield and awarded her $50,000 in compensatory damages and $100,000 in punitive damages.[1]

The plaintiff brought a motion to recover attorney's fees pursuant to 42 U.S.C. § 1988 ("Section 1988") and § 3613(c)(2), and on November 16, 1990, the court granted plaintiff Littlefield's motion and determined that Littlefield was entitled to recover attorney's fees in the amount of $138,-252.50 and expenses in the amount of $9,676.98. Because $1,361.50 had already been paid, the court found defendant Mack liable for attorney's fees in the amount of $146,567.98. In a subsequent order dated December 10, 1990, the court awarded the plaintiff an additional $16,636.50 in attorney's fees and $10,797.88 in expenses.[2]

On January 23, 1991, the plaintiff served State Farm General Insurance Company ("State Farm"), defendant Mack's insurance company, with a garnishment summons seeking the recovery of $174,002.36 in fees and expenses previously awarded to the plaintiff. The parties subsequently brought cross-motions for summary judgment on the sole remaining issue of whether State Farm was obligated to pay on defendant's behalf the attorney's fees and expenses awarded to the plaintiff under Section 1988. On February 6, 1992, this court granted the plaintiff's motion for summary judgment and ordered State Farm to pay the fees and expenses previously assessed against defendant Mack in this case. 789 F.Supp. 909.

This case is currently before the court on plaintiff Littlefield's motion to supplement garnishment and for entry of judgment. Since the court's order granting the plaintiff fees and expenses in September 1990, the plaintiff's attorneys have defended the appeal taken by State Farm on Mack's behalf and expended efforts to enforce the judgment in this case. On January 27, 1992, the Court of Appeals affirmed this court's decisions denying defendant's post-trial motions and awarding fees and expenses to the plaintiff. The plaintiff now seeks to recover $42,577.50 in attorney's fees and $1,302.52 in expenses incurred in litigating these matters. For the reasons stated below, the plaintiff's motion is granted and the defendant is ordered to pay the plaintiff $42,577.50 for attorney's fees and $1,302.52 for expenses incurred in the litigation of this case since September 1990.

## THE MOTION TO SUPPLEMENT GARNISHMENT AND FOR ENTRY OF JUDGMENT

The defendant argues that the plaintiff's motion is procedurally improper. Defen-

---

1. On January 7, 1992, the Court of Appeals for the Seventh Circuit affirmed the jury's verdict.

2. The court's decision regarding the award of attorney's fees and costs to the plaintiff has been upheld by the Seventh Circuit. *See Littlefield v. McGuffey,* 954 F.2d 1337 (7th Cir.1992).

dant Mack filed for bankruptcy on April 25, 1991. As the defendant suggests, this bankruptcy action imposes an automatic stay on the enforcement of judgments previously awarded against Mack. However, in this instance, the bankruptcy court has modified the automatic stay to permit this court to enter judgment in favor of the plaintiff and against defendant Mack for the award of attorney's fees and related expenses incurred since September 27, 1990. *See In re Malcolm McGuffey a/k/a Wally Mack,* 91 B 8924 (March 20, 1992). Therefore, the defendant's argument regarding the procedural impropriety of this motion is moot.

 The defendant also argues that the plaintiff's attorneys are not entitled to recover the requested fees. Section 1988 gives courts discretion to award prevailing parties, such as the plaintiff in this case, reasonable attorney's fees as part of the costs. 42 U.S.C. § 1988. Under Section 1988, reasonable attorney's fees are to be established in light of all the circumstances, including the time and effort expended by counsel for the prevailing party, as well as the prevailing market rate for attorneys in the relevant community. *Westfield Partners, Ltd. v. Hogan,* 744 F.Supp. 189, 192 (N.D.Ill.1990). An initial estimate of a reasonable fee is made by multiplying the number of hours reasonably expended on the case by a reasonable hourly rate. This amount then may be increased or decreased to reflect factors not subsumed by the initial calculation. *Id.*[3]

In this instance, the plaintiff has provided the court with this initial calculation. As already stated, the plaintiff claims that she is entitled to recover $42,577.50 in attorney's fees and $1,302.52 in expenses incurred in litigating this case since September 28, 1990. In support of this claim, the plaintiff has provided this court with a chronological breakdown of attorney's fees. The plaintiff has also provided the affidavit of Aram Hartunian ("Hartunian"), the at-

torney supervising her case, stating that he reviewed the time sheets submitted by the attorneys working on Littlefield's case and that they are accurate.

The question remaining is whether the amount established by the plaintiff is reasonable or should be adjusted to take into account factors not reflected in the plaintiff's calculation. The defendant argues that the plaintiff's fee calculation should not be accepted because the number of hours of legal work sought to be recovered by the plaintiff is unreasonable. The Seventh Circuit has stated that the standard of service to be rendered and compensated in cases such as this one is not one of perfection. Rather, "a litigant is entitled to attorney's fees under 42 U.S.C. § 1988 for an effective and completely competitive representation but not one of supererogation." *Charles v. Daley,* 846 F.2d 1057, 1076 (7th Cir.1988) (citing *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984)).

 Based upon this court's careful review of the time records submitted by the plaintiff's attorneys, we find that the number of hours of legal work claimed by plaintiff's attorneys is reasonable. Plaintiff's counsel have worked a total of 281.4 hours on Littlefield's case since September 28, 1990. This figure represents the work of four attorneys and a third year law student working for the law firm representing Littlefield. The majority of the hours of work claimed represent work on the brief and the oral argument of the defendant's appeal. Contrary to the defendant's contention, the numerous hours expended on the brief do not appear unreasonable. As the plaintiff suggests, the plaintiff was required to respond to the defendant's 49 page opening brief which addressed 9 bases for appeal. The plaintiff's response to this brief alone was 45 pages long. This court believes that spending approximately 120 hours on drafting a complex and lengthy brief is not unreasonable.

---

**3.** This approach is often call the "lodestar" approach. The court calculates the "lodestar amount" by determining the number of hours reasonably expended in the litigation. The court then considers whether any special circumstances justify adjusting the lodestar up or down. *See Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 776 F.2d 646, 651 (7th Cir.1985).

The defendant also asserts that the number of hours of work claimed by the plaintiff's attorneys is unreasonable because the defendant claims that plaintiff's attorney Steven P. Schneck spent approximately 54 hours reviewing and editing the appellate brief and Hartunian spent an additional 38 hours on these same tasks. The defendant compares this case to *Charles* where the court found that the time the attorneys spent reviewing and revising their briefs and other submissions was excessive. 846 F.2d 1057. In *Charles,* the court determined that six attorneys spent approximately 180 hours reviewing and revising their submissions to the court. *Id.* at 1076. The court concluded that while it did not "mean in any way to underestimate the importance of careful proofreading and thoughtful editing, ... there comes a time at which such endeavors reach a point of diminishing returns, and it is at that point where shifting the cost of such activity is inappropriate." *Id.* Consequently, the court only allowed 150 of the 180 hours of work requested to be paid by the attorneys' opponents. *Id.*

Compared to the time spent revising the submissions in *Charles,* this court finds that the time spent reviewing and revising the plaintiff's appellate brief in this instance was not unreasonable. Contrary to the defendant's determination that the plaintiff's attorneys spent almost 100 hours reviewing and revising their appellate brief, upon careful review of the submitted time sheets, the court finds that the plaintiff's attorneys only spent approximately 35–50 hours on this work. This number pales in comparison to the number of hours spent doing similar work in *Charles.* The plaintiff in this case did not have six attorneys reviewing and revising her appellate brief as did the party in *Charles.* Instead, the majority of the reviewing and revising of the appellate brief at issue, indeed the majority of the work on the appeal, was done by one attorney, Steven P. Schneck ("Schneck"). Given the complexity and the length of the brief at issue, this court does not believe that the 35–50 hours spent reviewing and revising the brief was unreasonable.

The fact that the plaintiff's counsel allegedly concentrates in complex federal litigation also does not affect the court's determination that the number of hours of work claimed by the plaintiff's attorneys is not unreasonable. There is no evidence in this case demonstrating that the plaintiff's counsel is abundantly familiar with appellate court practice and thus would have proper command of appellate court procedure without some investigation. There is also no evidence demonstrating that counsels' work on other complex cases affects the amount of work required to properly represent Littlefield in this case.

■ In addition, the court believes that plaintiff's counsel has adequately documented the work done on Littlefield's case. The attorneys' time sheets adequately demonstrate the dates and the length of time on which the attorneys worked on the stated activity. The defendant points to several instances where the plaintiff fails to explain in detail entries relating to the drafting of the appellate brief at issue. While the court recognizes that in a few isolated instances the plaintiff does not provide a thorough explanation of the work done on the appellate brief, the court finds that in the majority of instances the plaintiff does provide extremely thorough documentation. For example, on March 27, 1991, plaintiff's counsel explains that he did research on a new Supreme Court case on due process. On April 6, 1991, plaintiff's counsel explains that he put finishing touches on the brief including autociting the cases cited therein on LEXIS. Given the sufficiency of the plaintiff's attorneys' documentation of their work, the court will not decrease the hours submitted on this basis.

The defendant next contends that the plaintiff's fee petition is unreasonable because the hourly rates charged by the plaintiff's attorneys were unreasonable. In setting fees for prevailing counsel, courts have often based the award on the counselor's prevailing rate. *See Pennsylvania v. Del Valley Citizens' Council,* 483 U.S. 711, 716, 107 S.Ct. 3078, 3082, 97

L.Ed.2d 585 (1987).[4] Relying upon this precedent, the plaintiff requests that the fee award in this case be based upon the attorneys' current billing rates. The defendant counters that the court should not rely upon the attorneys' current billing rates because these rates are unreasonably high and are based upon recent increases in the rate charged for each attorney's time.

■ The defendant argues, for example, that attorney Schneck's rate was $100 per hour, as compared to his current rate of $135 per hour, at the time that the prior fee petition was filed in this case. The defendant contends that Schneck's new rate has increased by approximately 33% and is unwarranted. Schneck has only practiced law since 1987 and the defendant contends that Schneck's experience does not justify such a substantial increase in his hourly rate. *See Prince v. Village of Round Lake Beach*, 754 F.Supp. 643 (N.D.Ill.1991).

This court recognizes that in *Prince* the court found that $100 per hour was a reasonable rate to charge for an associate attorney who has practiced law for less than four years and who has not provided the court with evidence of qualifications or experience which would justify a higher rate. *Id.* at 644. However, in the instant case, attorney Schneck has clearly played a significant enough role in this litigation to entitle him to receive his current hourly rate of $135. Schneck actively participated in the trial of this case before this court and, as the submitted time sheets reflect, played an equally active role in litigating the defendant's appeal in this case. The Supreme Court has recognized that in cases such as this one, "where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee ..." *City of Riverside v. Rivera*, 477 U.S. 561, 569, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1985) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). Moreover, the fact that the attorney recently raised his hourly rate

does not automatically indicate that the new rate cannot be relied upon in establishing a fee award under Section 1988. There is no indication in this case that Schneck raised his rate prior to filing this fee petition in order to try to obtain higher fees. The court also does not believe that it is unreasonable that Schneck has raised his rate from $100 in September 1990 to his current rate of $135. The court therefore will not discount Schneck's rate as the defendant suggests.

■ The defendant also attacks Hartunian's hourly rate of $250 as unreasonable. According to the defendant, the court in *Westfield Partners Ltd.* determined that $100 was a reasonable rate for the attorney in the Section 1988 case at issue. 744 F.Supp. at 192. However, as the plaintiff suggests, the court in *Westfield Partners Ltd.* relied upon the attorney's suggestion of $100 because that was the rate the attorney had agreed upon with his client. *Id.* The court determined that in light of the time required to litigate the action, as well as the experience and the going rate in the Chicago land area, the hourly rate suggested by the attorney was acceptable. *Id.*

This court believes that Hartunian is entitled to receive his requested hourly rate. Hartunian is a partner in a law firm and his established hourly rate is currently $250 per hour. As explained in his affidavit, he has also been actively involved in class action practice since 1971. Thus, Hartunian clearly has brought years of trial experience with complex litigation to his work on the instant case. Moreover, as discussed with respect to Schneck, there is no indication that Hartunian has raised his hourly rate from $225 in September 1990 to his current rate of $250 in order to obtain a higher award in the instant case. Because the court does not believe that it is unreasonable that Hartunian raised his hourly rate by $25 since September 1990, the court finds that Hartunian is entitled to receive his current hourly rate.[5]

---

**4.** Relying upon current rates attempts to compensate attorneys for the delay in recovering their fees and the risk of nonpayment should

they not succeed in the litigation. *See Pennsylvania*, 483 U.S. at 716, 107 S.Ct. at 3082.

**5.** Similarly, the court also does not believe that it is unreasonable for attorney Ronald L. Futter-

The defendant further argues that the plaintiff's request for reimbursement for approximately 30 hours of work by a law student at an hourly rate of $60 is also unreasonable. The defendant claims that this rate has been increased from $30 in August 1990. However, there is no indication that this rate increase is related in any way to the plaintiff's fee petition in this case. Moreover, as previously discussed, a rate increase from September 1990 does not appear unreasonable to this court particularly in light of the fact that the work was done by a third year law student in this instance, as opposed to being done by a first year law student in the earlier petition. Indeed, the court notes that the legal research and writing done by the student in this instance might otherwise have been done by an attorney at a much greater cost. Therefore, the court grants the plaintiff's request for $42,577.50 in attorney's fees for work done in this case since September 1990. The court also grants the plaintiff's request for $1,302.52 in expenses. Based upon careful examination of the plaintiff's petition as well as the fact that the defendant has not objected to the expenses requested, the court finds that the expenses requested are reasonable.

## CONCLUSION

For the reasons stated above, the court grants the plaintiff's motion for entry of judgment and to supplement garnishment. The defendant is ordered to pay the plaintiff $42,577.50 in attorney's fees and $1,302.52 in expenses.

man to receive his current hourly rate of $225. He is a partner in the law firm representing the plaintiff and has been practicing law for almost 25 years. He further appears to have extensive experience in complex litigation.