942 F.2d 1480
 ELKS NATIONAL FOUNDATION, a legal entity, et al., Plaintiff-Appellant,
v.
Fred J. WEBER, et al.; Shell Oil Company; Continental Oil
Company; Robert P. Schwinn, Individually and as
Successor Liquidating Trustee of
McDonald & Eide, Inc.,
Defendants-Appellees.
 No. 90-35799.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 11, 1991.
Decided Aug. 29, 1991.
 
 Frank B. Morrison, Jr., Morrison Law Offices, Helena, Mont., Gene Huntley, Baker, Mont., for plaintiff-appellant.
 Chris Mangen, Jr., Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Mont., for defendant-appellee Continental Oil Co.
 William H. Bellingham, Moulton, Bellingham, Longo & Mather, P.C., Billings, Mont., for defendant-appellee Shell Oil Co.
 Robert C. Smith, Cavan, Smith, Grubbs & Cavan, Billings, Mont., for defendant-appellee McDonald & Eide, Inc.
 Richard Larson, Chronister, Driscoll & Moreen, Helena, Mont., for defendants-appellees Weber, Turnage, Harrison, Hunt, McDonough, Langen, Haswell, Hegel and Wilson.
 Appeal from the United States District Court for the District of Montana.
 Before D.W. NELSON, NOONAN and T.G. NELSON, Circuit Judges.
 THOMAS G. NELSON, Circuit Judge:
 
 
 1
 Appellants here are disappointed litigants in Montana state court litigation who brought this 42 U.S.C. § 1983 action in federal district court against the justices of the Montana Supreme Court, two Montana district court judges and other parties to the state court case. We affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction and its award of attorneys fees, and award attorneys fees on appeal.
 
 
 2
 * Facts and Proceedings Below
 
 
 3
 This action in the federal courts follows long and colorful litigation in Montana state courts concerning ownership of the working interest in an oil and gas lease in the N 1/2 of the NW 1/4 of section 8, T7N, R60E, Fallon County, Montana. Details of the basic dispute can be found in the first opinion of the Supreme Court of Montana, Gunnip v. Continental Oil Co., 223 Mont. 141, 727 P.2d 1315 (1986) (Gunnip ). It is sufficient to set the stage for resolution of the issues here to say that, in 1955, the corporate owner of the entire working interest in the lease assigned a one-half interest in that portion covering the north 1/2 to H.W. McDonald. McDonald did not record the assignment until 1963. (Appellants here claim as McDonald's assignees and will be referred to as such.) In the meantime, a conflicting assignment was made to predecessors of Continental Oil Company, who then assigned a one-half interest to Continental. Since McDonald had already filed a quiet title action against the holders of the conflicting assignment, in 1962 Continental persuaded McDonald to sign an agreement ratifying the assignment to Continental of the one-half interest. That ratification agreement further provided:
 
 
 4
 For the same consideration, the undersigned [McDonald] does hereby transfer, set over and convey unto Continental Oil Company an undivided one-half ( 1/2) interest in the oil and gas lease above described....
 
 
 5
 At the time of the execution of the ratification agreement, McDonald held a 50% interest in the north 1/2 and a 100% interest in the south 1/2. The burning question which has occupied the courts of Montana for these many years is whether McDonald transferred 50% of the working interest in the lease, or 50% of only his share of the working interest in the lease.
 
 
 6
 The quiet title action by McDonald proceeded to judgment, as did a separate action filed by the shareholders of the corporate one-time holder of the entire working interest. These decisions created a situation which can be described as unclear.
 
 
 7
 The Montana state court litigation which immediately preceded this action was filed by non-McDonald assignees against Continental and Shell Oil Company. The McDonald assignees were not parties to the action originally. The Supreme Court of Montana reversed a summary judgment in Continental's favor, holding that unresolved issues of material fact remained regarding the interest of Continental. The court said:
 
 
 8
 A trial must be held to assess Continental's interest considering potential application of adverse possession, waiver and estoppel.
 
 
 9
 The court cannot decide Continental's interest under McDonald's ratification agreement without McDonald's assignees before the court. They must be joined on remand.
 
 
 10
 Continental's asserted 50% interest in the N 1/2 of the Lease must be tested against the interest of McDonald's assignees and their successors in interest....
 
 
 11
 Gunnip, 727 P.2d at 1317.
 
 
 12
 On remand, the McDonald assignees were joined and designated plaintiffs, and the former plaintiffs were redesignated defendants. The Montana district court considered the effect of the 1962 ratification agreement and ruled that McDonald conveyed only one-half of his interest in the north 1/2 to Continental. The Supreme Court of Montana took the case under a writ of supervisory control under Rule 17, M.R.App.P. The court said:
 
 
 13
 [S]upervisory control is proper to control the course of litigation when the lower court has made a mistake of law or willfully disregarded the law so that a gross injustice is done and there is no adequate remedy by appeal; also, to prevent extended and needless litigation.
 
 
 14
 Continental Oil Co. v. Elks National Foundation, 767 P.2d 1324, 1326 (1989).
 
 
 15
 Concerning the McDonald assignees' position the court said:
 
 
 16
 The plaintiffs argue here, as they did before the District Court, that the ratification is ambiguous so that a court must look beyond the four corners of the document to interpret it. The Court was not persuaded by that argument in Gunnip, nor is it now.
 
 
 17
 [In the Gunnip decision] this Court recognized that the ratification conveyed an "undivided one-half interest" in the lease. Then, as now, we found no ambiguity in the ratification agreement. We remanded so that adverse possession, waiver, and estoppel could be considered as theories under which Continental might have subsequently lost or forfeited any portion of its one half interest. The District Court ignored this Court's opinion and reconsidered the effect of the ratification agreement. We therefore grant supervisory control.
 
 
 18
 We have considered all materials and evidence submitted by plaintiffs, including copies of certain oil division orders and correspondence between Continental and plaintiffs' attorney. We have considered whether these might support a theory of adverse possession, waiver, or estoppel against Continental. [Id. at 1326.]
 
 
 19
 The McDonald assignees petitioned for rehearing, contending, at least inferentially,[1] to have been denied due process under the Constitution of the United States. The Supreme Court of Montana denied the petition without opinion. The McDonald assignees did not petition the Supreme Court of the United States for certiorari.
 
 
 20
 The McDonald assignees filed suit in the United States District Court for the District of Montana pursuant to 42 U.S.C. § 1983 against the justices of the state supreme court and two judges of the state district court, all in their official capacity only, seeking no damages, fees or costs against any of the judicial officers. They also named Continental Oil Company and Shell Oil Company, among others.
 
 
 21
 The basis of the action was that the Montana Supreme Court in Continental Oil denied them due process of law, and deprived them of property without a hearing under color of state law. They asked for judgment:
 
 
 22
 1. declaring the Supreme Court judgment unconstitutional as to them;
 
 
 23
 2. declaring the judgment void as to them;
 
 
 24
 3. issuing preliminary and permanent injunctions restraining defendants from enforcing or implementing the judgment;
 
 
 25
 4. granting them the relief they were entitled to in the state litigation;
 
 
 26
 5. awarding attorneys fees and costs.
 
 
 27
 The federal district court dismissed the case for lack of subject matter jurisdiction, and awarded attorneys fees to the defendants pursuant to 42 U.S.C. § 1988 and, alternatively, under Rule 11, FED.R.CIV.P.
 
 II
 Standard of Review
 
 28
 We review the existence of subject matter jurisdiction de novo, Kruso v. IT & T Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990), and awards of attorneys fees under 42 U.S.C. § 1988 for abuse of discretion, Cunningham v. County of Los Angeles, 879 F.2d 481, 483 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990), as we do Rule 11 sanctions. Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).
 
 III
 Subject Matter Jurisdiction
 
 29
 The Supreme Court of the United States is the only federal court authorized to hear appeals from state courts.[2] In District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Supreme Court said:
 
 
 30
 [United States District Courts] do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court.
 
 
 31
 460 U.S. at 486, 103 S.Ct. at 1317.
 
 
 32
 The McDonald assignees cite only Robinson v. Ariyoshi, 753 F.2d 1468 (9th Cir.1985), vacated, 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986), (Robinson I ), in their attempt to find grounds for subject-matter jurisdiction in the federal district court. Their reliance on that case is both misplaced and ill-advised.
 
 
 33
 The Robinson case arose out of a decision of the Supreme Court of Hawaii which sua sponte overruled territorial cases dealing with diversion and use of water. McBryde Sugar Co. v. Robinson, 54 Haw. 174, 504 P.2d 1330, 1344 (1973), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 appeal dismissed, 417 U.S. 962, 94 S.Ct. 3164, 41 L.Ed.2d 1135 (1974). The McBryde decision had potential impact not only on the parties to the litigation but on every water user in Hawaii. The parties adversely affected by the decision petitioned the Hawaii Supreme Court for rehearing attempting to assert state and federal constitutional claims which arose as a result of the opinion. The state supreme court denied the petition without opinion or hearing.
 
 
 34
 Following denial of certiorari by the Supreme Court of the United States, (417 U.S. 962, 94 S.Ct. 3164, 41 L.Ed.2d 1135 (1974)) Robinson filed suit in the federal district court. In Robinson I, this court analyzed the bar to federal court jurisdiction under Feldman as essentially calling for a res judicata analysis on whether an issue has been considered and decided in the state courts.
 
 In Robinson I, the court said that the
 
 35
 crux of the question is whether there has already been actual consideration of and a decision on the issue presented. If consideration and decision have been accomplished, action in federal court is an impermissible "appeal" from the state court decision. [Citations omitted.] If no consideration has been given, or any decision on the matter is ambiguous, it is unlikely that the issues presented to the state high court and the federal court are so "inextricably intertwined" that the federal court cannot take jurisdiction. Nor is it likely that there will have been a full enough and fair enough opportunity for litigation to warrant the claim preclusive effect of res judicata.
 
 
 36
 753 F.2d at 1472.
 
 
 37
 The Montana Supreme Court did hear and decide the issue of the ambiguity of the ratification agreement. Res judicata forecloses further consideration of this issue unless there was not a "full enough and fair enough" opportunity to litigate the issue. It is clear that the McDonald assignees were given an opportunity to litigate the issue and that the Montana Supreme Court considered those arguments. (See Part IV B, infra.) The McDonald assignees have no defense against the assertion that their arguments on the ambiguity of the ratification agreement were presented to, and considered by, the state courts. Thus, the McDonald assignees' reliance on Robinson I is ill-advised because any res judicata analysis, no matter how myopic, will readily disclose that the Montana courts have decided and re-decided the issue of the quality and quantity of appellants' interests in the lease, and that the McDonald assignees were afforded a full and fair opportunity to be heard.
 
 
 38
 The McDonald assignees have yet another problem with their reliance on Robinson I. The Supreme Court vacated the decision and remanded for reconsideration in light of a subsequent decision of that Court shedding light on the ripeness doctrine. On remand by this court, the district court confirmed its previous decision. On the second appeal, this court remanded with instructions to dismiss the complaint because the case did not present a ripe controversy (Robinson II, 887 F.2d 215 (1989)).
 
 
 39
 Even if we assume for purposes of discussion that it is fair to discuss Robinson I without mentioning its subsequent history, as the McDonald assignees have, they do not benefit from the decision. Robinson I analyzed Feldman as follows:
 
 
 40
 In Feldman, the Supreme Court held that where allegations underlying a state's highest court's final judicial decisions are "inextricably intertwined" with issues presented to a federal court, the federal court has no jurisdiction over those issues even if those challenges included constitutional claims.
 
 
 41
 753 F.2d at 1472 (citations omitted). The McDonald assigns here complain, not of the substantive law applied by the Montana courts, but of the procedure by which the state supreme court reached the ambiguity question. It is difficult to postulate a situation where the federal issues sought to be asserted are more "inextricably intertwined" with the state court's decision.
 
 
 42
 Finally, the facts of Robinson I are distinguishable from the facts of this case. The state court there issued a decision which allegedly overturned the existing state water rights system. It was the imposition of the new substantive rule that gave rise to the claims of a taking without due process in Robinson I.[3] The relief granted by the federal district court which was the subject of the appeal in Robinson I was an injunction against applying the new law announced in McBryde. In Continental Oil and Gunnip, the state court applied well-polished rules of Montana law that unambiguous written instruments do not need interpretation.[4] In this case, there is no new substantive rule of Montana law at issue which could take property without due process if applied in other cases. It is only the specific result in Continental Oil which the McDonald assignees have challenged in federal court. If McDonald's assignees were entitled to pursue their claim in federal court, every disappointed litigant in a property dispute would contend in federal court that the state court decision constituted a taking without due process. Robinson I provides appellants no method for obtaining federal jurisdiction over their claim. McDonald's assignees' sole avenue for redress in the federal system was a petition for a writ of certiorari to the Supreme Court of the United States.
 
 IV
 Attorneys Fees
 
 43
 A. In the district court.
 
 
 44
 The district court awarded attorney fees under 42 U.S.C. § 1988, and alternatively, under Rule 11. This court has said that fees may be awarded against an unsuccessful plaintiff under section 1988 only if the action is "meritless, in the sense it is groundless or without foundation." Mitchell v. Los Angeles Community College District, 861 F.2d 198, 202 (1988), cert. denied, 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989). The district court's decision under this standard is reviewed for abuse of discretion. When the McDonald assignees' complaint is measured against Robinson I, the only authority they cited here, it is clear that the district court did not abuse its discretion in awarding attorneys fees to appellees.
 
 
 45
 B. On appeal.
 
 
 46
 Even though a district court's award of attorneys fees to defendants under 42 U.S.C. § 1988 is upheld on appeal, it does not necessarily follow that fees will be awarded on appeal. See, e.g., Price v. Hawaii, 939 F.2d 702 (9th Cir.1991). The standard for award of attorneys fees on appeal is the same as in the district court, United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 647 (9th Cir.), cert. denied, 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986), and this court will exercise its own discretion in determining whether to award attorneys fees on appeal. Id. The lack of jurisdiction of the district court is apparent. However, the McDonald assignees have come here, represented by the retired justice of the Montana Supreme Court who wrote the Gunnip decision, to argue forcefully that jurisdiction existed in the district court and that they are entitled to the relief they seek.
 
 
 47
 In order to avoid any appearance of hastening to conclude that the appeal was frivolous because the district court lacked jurisdiction, we have also examined the merits of the position the McDonald assignees would have had to argue if jurisdiction had existed in the lower federal courts. In doing so, we assume for purposes of the discussion that appellants would not have tried to go beyond the record we now have. The res judicata and "inextricably intertwined" problems apparent on this record would only worsen if further inquiry were made into the proceedings held in the Montana state courts.
 
 
 48
 The McDonald assignees' claims raise basically a denial of procedural due process. They contend that the legal issue of the ambiguity of the ratification agreement as to them was not before the district court on remand, in the view of the Montana Supreme Court. Therefore, they argue, they were denied an opportunity to be heard on that issue.
 
 
 49
 The proceedings before the Montana Supreme Court do not support this contention. The McDonald assignees briefed the ambiguity issue, orally argued before that court, and, at oral argument, supported Continental's request for determination of Continental's interest in the N 1/2. Continental Oil, 767 P.2d at 1325.
 
 
 50
 Due process requires an opportunity to be heard in a meaningful manner at a meaningful time. Parratt v. Taylor, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981), rev'd on other grounds, 474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1985). It is clear beyond argument that the McDonald assignees were afforded a meaningful opportunity to be heard before the Supreme Court of Montana on the purely legal issue of the facial ambiguity of the ratification agreement. Even though that court maintained its view of the ambiguity of the ratification agreement expressed in Gunnip, decided at a time when the McDonald assignees were not parties to the case, they had an opportunity to brief and argue their position in Continental Oil. The court specifically considered their position: "The plaintiffs argue here ... that the ratification agreement is ambiguous.... The Court was not persuaded by that argument in Gunnip, nor is it now." Continental Oil, 767 P.2d at 1326 (emphasis supplied). In addition, as noted before, they joined with Continental in the supervisory control proceedings in urging the Montana Supreme Court to decide the question of Continental's interest in the lease. Apparently they thought at that time the court had everything before it that it needed to decide the issue. The McDonald assignees confuse process with result.
 
 
 51
 No denial of due process is shown by the record in this case. The district court not only lacked jurisdiction, the substantive position of the McDonald assignees is devoid of legal merit. Under these circumstances, an award of attorneys fees and costs on appeal is appropriate.
 
 CONCLUSION
 
 52
 The judgment of the district court is AFFIRMED. Attorneys fees and costs on appeal are awarded to appellees.
 
 
 
 [1]
 In the Petition for Rehearing before the Montana Supreme Court, they said:
 [W]e are entitled to request, that if this court does not grant a rehearing that it, at a minimum, articulate:
 
 
 [3]
 Why the U.S. and Montana constitutions relative to due process and the United States statutes relative to civil rights do not apply?
 (Appellants' Opening Brief, at 25.)
 
 
 [2]
 28 U.S.C. § 1257(a) provides:
 Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statue of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statues of, or any commission held or authority exercised under, the United States.
 
 
 [3]
 The court stated the main issue to be: "Can the state, by a judicial decision which creates major changes in property law, divest property interests?" Robinson I, 753 F.2d at 1471
 
 
 [4]
 Montana has a number of statutes relating to interpretation of documents. See §§ 28-3-303, 28-3-401, 70-20-202, Montana Code Annotated. In Montana, whether ambiguity exists is a question of law for the court. See Monte Vista Co. v. Anaconda Co., 231 Mont. 522, 755 P.2d 1358 (1988) (collecting cases)