In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2709

Citizens for a Better Environment,

Plaintiff-Appellee,

v.

The Steel Company, also known as
Chicago Steel and Pickling Company,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 4534--George M. Marovich, Judge.


Argued February 9, 2000--Decided October 17, 2000


  Before Bauer, Easterbrook, and Ripple, Circuit Judges.

  Easterbrook, Circuit Judge.  The Steel Company
missed reporting deadlines established by the
Emergency Planning and Community Right-To-Know
Act, 42 U.S.C. sec.sec. 11001-50. Notified of its
default by Citizens for a Better Environment
(CBE), The Steel Company quickly furnished all
required documents. Nonetheless CBE filed suit
under the Act's citizen-suit provision. 42 U.S.C.
sec.11046(a)(1). The Act authorizes a civil
penalty of $25,000 per day per report for
tardiness, 42 U.S.C. sec.11045(c), and by the
complaint's calculations The Steel Company could
have owed more than $537 million. The Steel
Company replied that CBE is not entitled to pursue
such a claim. A panel of this court rejected this
argument without discussing CBE's standing, 90
F.3d 1237 (7th Cir. 1996), but the Supreme Court
unanimously reversed. Steel Co. v. Citizens for
a Better Environment, 523 U.S. 83 (1998). Six
Justices concluded that, even if delay in
disclosure injured CBE, that injury could not be
redressed given that any civil penalty would be
paid to the United States rather than a private
plaintiff; CBE therefore lacks a justiciable
controversy with The Steel Company. 523 U.S. at
102-10. Three Justices concluded that Congress
has authorized citizen suits only if the
litigation begins before the firm files all
required reports; these three did not decide

whether CBE has standing. Id. at 131-34 (Stevens, J., joined by Souter & Ginsburg, JJ.).

It took three years and $270,000 in attorneys' fees for The Steel Company to convince the federal judiciary that CBE was whistling in the dark. After the Supreme Court's decision, we know that this suit never should have been filed. Now The Steel Company wants to be placed in the pecuniary position it would have occupied but for the suit. Accordingly, it moved in the district court for an award of attorneys' fees under sec.11046(f), only to be told "no jurisdiction." 1999 U.S. Dist. Lexis 9042 (N.D. Ill. June 8, 1999). Though those words were music to its ears when sung by the Supreme Court, The Steel Company insists that this repeat is not in the score.

The district court thought that, if CBE lacks standing to seek civil penalties from The Steel Company, then The Steel Company must lack standing to seek attorneys' fees from CBE. A court either has jurisdiction or it doesn't, the district judge believed, and the Supreme Court has put this case in the no-jurisdiction cubbyhole. Yet "[c]ourts that lack jurisdiction with respect to one kind of decision may have it with respect to another. See Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1077-79 (7th Cir. 1987). A court, for example, always has jurisdiction to consider its own jurisdiction". Muthig v. Brant Point Nantucket, Inc., 838 F.2d 600, 603 (1st Cir. 1988) (Breyer, J.). See also Yang v. INS, 109 F.3d 1185, 1192-94 (7th Cir. 1997). In particular a court may lack authority to resolve the merits of a claim yet have jurisdiction to award costs and attorneys' fees to the prevailing party. We held this in Szabo Food Service, and the Supreme Court agreed in Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393-98 (1990), and Willy v. Coastal Corp., 503 U.S. 131 (1992). In this very case the Supreme Court granted certiorari, held a hearing, and considered whether federal courts had jurisdiction to entertain the suit. The Court said no, and it had jurisdiction to say no. Article III of the Constitution authorized the proceedings in which the Court gave its answer. Article III allowed this court on remand to direct that the district court dismiss the suit. Article III allowed taxation of costs against CBE pursuant to 28 U.S.C. sec.1919 in the Supreme Court and here on remand. Article III allows an award of other costs of litigation, including attorneys' fees, incurred in the proceedings. Although CBE lost because the judiciary could not redress any injury it suffered from The Steel Company's delay in filing the required reports, The Steel Company's injury (the costs of defending this litigation) assuredly may be

redressed by an order requiring CBE to reimburse those expenses. That satisfies Article III. The Steel Company has only to establish that federal law authorizes the district court to make the award.

The district court's conviction that it may not award attorneys' fees reflects a misunderstanding of what the Supreme Court said in this litigation about Article III. The Court concluded that CBE's prospect of recovering costs and legal fees if it prevailed on the merits could not justify adjudicating the question whether The Steel Company had violated the Act. "[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit." 523 U.S. at 107. But a fee award is the substantive issue in The Steel Company's motion. It has been injured in fact to the tune of $270,000 and counting. CBE's suit inflicted that injury, which can be redressed by an award in The Steel Company's favor. Malicious prosecution and abuse of process are very old torts that reflect a defendant's entitlement to be made whole following wrongful litigation--including litigation so baseless that it does not even come within the jurisdiction of the court in which it was filed. Suppose a federal statute established the right to recover for loss caused by "wrongful invocation of federal jurisdiction," affording compensatory damages to defendants who have been dragged pointlessly through federal court. The constitutionality of such a provision could not be doubted, nor would anyone deny that the aggrieved former defendant has standing to avail itself of the federal right so created. Cf. 28 U.S.C. sec.sec. 1495, 2513 (granting such a remedy to a criminal defendant who can establish innocence). That the aggrieved litigant invoked its entitlement by counterclaim rather than by an independent suit would not deprive the district court of authority to supply the remedy.

Until 1875 federal courts did not award either attorneys' fees or any other costs in cases that had been dismissed for want of jurisdiction. The reason lay in the common law, not the Constitution, the Court explained in Mansfield C.&L.M. Ry. v. Swan, 111 U.S. 379, 386-87 (1884). In considering the power conferred on circuit courts by the Act of March 3, 1875, 18 Stat. 470, 472, to award costs secured by a bond when remanding a suit to state court, the Court observed: "These provisions were manifestly designed to avoid the application of the general rule, which, in cases where the suit failed for want of jurisdiction, denied the authority of the court to award judgment against the losing party, even for costs." Id. at 387. Mansfield applied the new statute and held that costs may be awarded even when the court to which the action

is removed lacks jurisdiction to decide the merits. The law applied in Mansfield is still on the books, now split into two and modified. One part appears in 28 U.S.C. sec.1919:

Whenever any action or suit is dismissed in any district court, the Court of International Trade, or the Court of Federal Claims for want of jurisdiction, such court may order the payment of just costs.

The other survives as 28 U.S.C. sec.1447(c):

If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

We applied this statute in Garbie v. DaimlerChrysler Corp., 211 F.3d 407 (7th Cir. 2000), stating that attorneys' fees should be normal incidents of remands for lack of jurisdiction; none of the parties suggested that sec.1447(c) violates Article III, and such a contention would have been untenable. Use of this fee-shifting power has been uncontroversial. See, e.g., Morgan Guaranty Trust Co. v. Republic of Palau, 971 F.2d 917 (2d Cir. 1992); Mints v. Educational Testing Service, 99 F.3d 1253 (3d Cir. 1996); W.H. Avitts v. Amoco Production Co., 111 F.3d 30 (5th Cir. 1997); Stallworth v. Greater Cleveland RTA, 105 F.3d 252 (6th Cir. 1997).

Willy noted that statutes such as sec.sec. 1919 and 1447(c) permit awards of litigation expenses in suits that federal courts are not authorized to decide on the merits. Cooter & Gell held that Fed. R. Civ. P. 11 permits such awards in cases originally within the court's jurisdiction but voluntarily dismissed by plaintiffs before defendants seek fees. Then Willy generalized that approach by holding that attorneys' fees may be awarded under Rule 11 even if the case never came within the district court's subject-matter jurisdiction. The district court sought to distinguish these decisions:

[A] court's authority to award attorney's fees or sanctions under Rule 11 is drawn not from the Constitution's Article III jurisdictional requirements, but rather congressional authority under Article I, sec. 8, cl. 9 to establish laws regulating the conduct of the courts. Willy, 503 U.S. at 136. The imposition of Rule 11 sanctions therefore is a procedural matter that is not

restricted by Article III standing requirements. Here, the procedural concerns regarding abuse of the judicial system present in both Willy and Cooter & Gell are notably absent. As such, the Supreme Court's Rule 11 jurisprudence is not germane.

This passage confuses two concepts--legislative authority to create rights and remedies (located in Article I), and adjudicative authority (located in Article III). Article I conferred on Congress authority to enact not only 28 U.S.C. sec.sec. 1919 and 1447(c), but also the Rules Enabling Act, 28 U.S.C. sec.sec. 2071-77, which underpins Rule 11. That laws are enacted under Article I does not justify dispensing with standing requirements under Article III; courts possess no more authority to issue advisory opinions (or otherwise exceed their jurisdiction) in "procedural matters" than in other matters. Still, a motion seeking an award under any of these rules or statutes is a case or controversy that may be adjudicated to the extent the movant has suffered at its adversary's hands an injury may be redressed by a decision in its favor. Steel Co., 523 U.S. at 102-04. Article III therefore presents no obstacle to fee-shifting, whether or not the fees were incurred in proceedings that were cases or controversies under Article III. To see this, consider costs and attorneys' fees incurred in proceedings before administrative agencies. That the agency proceedings were not conducted under Article III does not preclude awards of costs and fees to the prevailing party, when legislation authorizes litigation to recoup those outlays. See New York Gaslight Club, Inc. v. Carey, 447 U.S. 54 (1980) (federal suit to recover legal expenses of state administrative and judicial proceedings enforcing Title VII of the Civil Rights Act of 1964); Brown v. Griggsville Community Unit School District No. 4, 12 F.3d 681 (7th Cir. 1993) (federal suit to recover attorneys' fees necessitated by state administrative proceedings under the IDEA). Not all statutes authorize claims of this kind; North Carolina Department of Transportation v. Crest Street Community Council, Inc., 479 U.S. 6, 13-15 (1986), held that 42 U.S.C. sec.1988, unlike Title VII, does not support a suit whose sole object is to recover legal expenses incurred in nonjudicial proceedings. But this is a matter of statutory meaning, not of power to adjudicate, a distinction that the Supreme Court emphasized in this very case. 523 U.S. at 89-90.

The district court drew comfort for its position from decisions of other circuits. Ass'n for Retarded Citizens v. Thorne, 68 F.3d 547, 552 (2d Cir. 1995) (relying on W.G. v. Senatore, 18 F.3d 60 (2d Cir. 1994)); Keene Corp. v. Cass, 908

F.2d 293, 298 (8th Cir. 1990); and Branson v. Nott, 62 F.3d 287, 292-94 (9th Cir. 1995), hold that defendants cannot obtain awards of fees under sec.1988 if the district court lacked subject-matter jurisdiction. Branson conceded that "there are some circumstances in which attorney's fees or costs may be imposed even where the court proves to be without subject matter jurisdiction" (62 F.3d at 293 n.10, citing 28 U.S.C. sec.sec. 1919 and 1447(c)) but did not attempt to distinguish those provisions from sec.1988. The other two decisions have even less reasoning. Yet before Thorne, Branson, and Keene, this circuit had reached a contrary conclusion. See Charles v. Daley, 846 F.2d 1057 (7th Cir. 1988). In Charles the Supreme Court concluded that a would-be appellant lacked standing, knocking out jurisdiction over an appeal. Diamond v. Charles, 476 U.S. 54 (1986). Then we ordered the party who had caused the unnecessary proceedings to pay the other side's costs and attorneys' fees under sec.1988. Thorne, Branson, Keene and the district court all neglected Charles and its predecessors, including Sanders v. CIR, 813 F.2d 859 (7th Cir. 1987), and Moten v. Bricklayers International Union, 543 F.2d 224 (D.C. Cir. 1976). Sanders concluded that because a court has jurisdiction to determine its own jurisdiction, the Tax Court may award attorneys' fees in a proceeding that it is not authorized to decide on the merits; Moten reached a similar conclusion under the fee-shifting provision in 42 U.S.C. sec.2000e-5(k). Although the district court in Charles had jurisdiction, as the district court here did not, the award of fees dealt with proceedings on appeal, proceedings that were not properly initiated because the appellant lacked standing, and there was accordingly no case presented for decision on the merits. If an award of fees was within the court's jurisdiction in Charles, it is equally within the court's jurisdiction here. Nothing in Thorne, Branson, Keene, or the district court's opinion persuades us that Charles or Sanders should be limited or overruled.

The final appellate decision on which the district court relied does not support its decision. Cliburn v. Police Jury Association of Louisiana, Inc., 165 F.3d 315 (5th Cir. 1999), held that the language of a particular fee-shifting provision, properly construed, does not authorize awards to defendants when the underlying suit is outside federal jurisdiction. The provision at issue reads:

In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable

attorney's fee and costs of action to either party.

29 U.S.C. sec.1132(g)(1). The fifth circuit concluded (165 F.3d at 316):

The district court's dismissal of Cliburn's claims for lack of subject matter jurisdiction is inconsistent with an award of fees and costs under a statute which requires "any action under this subchapter." In dismissing Cliburn's suit, the district court determined that there was no ERISA "action." Furthermore, given that ERISA is inapplicable to Cliburn's claims, it is inconsistent to conclude that either Cliburn or the Police Jury Association is "a participant, beneficiary, or fiduciary" eligible to invoke sec.1132(g)(1). Given that the district court lacked jurisdiction to hear Cliburn's claims under ERISA, it logically follows that the court lacked jurisdiction to entertain the Police Jury Association's request for fees, costs, and expenses under ERISA.

We have no quarrel with this conclusion, but it does not shed light on the application of 42 U.S.C. sec.11046(f), which provides:

The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or the substantially prevailing party whenever the court determines such an award is appropriate.

Does this cover The Steel Company's request? CBE has not advanced an argument along Cliburn's lines that The Steel Company's motion for fees did not ask the district court for an award "in issuing any final order in any action brought pursuant to this section". CBE's action was "brought pursuant to" sec.11046; it could not have been brought under any other law, and the suit's failure did not make it the less one "brought pursuant to" sec.11046. See Steel Co., 523 U.S. at 92-93. CBE does, however, make two other statutory arguments against application of sec.11046(f), the first of which focuses on the words "prevailing party". Has The Steel Company "prevailed" in this litigation?

Texas State Teachers Association v. Garland Independent School District, 489 U.S. 782, 792 (1989), concluded that a plaintiff prevails for purposes of 42 U.S.C. sec.1988 only if "at a minimum . . . the plaintiff [can] point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Alternatively, the Court wrote, the "touchstone

of the prevailing party inquiry must be the material alteration of the legal relationship of the parties" (489 U.S. at 792-93). We may assume that sec.11046(f) uses "prevailing party" in the same way. If a plaintiff prevails by securing a change in legal relations, then a defendant prevails by securing an entitlement not to have any change in legal relations. If a plaintiff prevails by an award of damages or an injunction, the defendant prevails by securing a declaration that it need not pay damages or alter its behavior. Defeating a plaintiff on the merits is one way to obtain such assurance, but hardly the only way. A declaration that the plaintiff and others like it are not even entitled to sue accomplishes the same end, and more. The Steel Company could have "prevailed" by obtaining a declaration that it need not pay a penalty for this particular delay; instead it obtained from the Supreme Court much more--a decision foreclosing any private plaintiff from suing about this delay or any other. This is the most sweeping victory for which it could have hoped.

Sometimes victory on a jurisdictional point merely prolongs litigation. A defendant may persuade the court that the plaintiff has sued too soon, or in the wrong court, or failed to jump through a procedural hoop. Then the dispute will continue later, or elsewhere, and it remains to be seen who will prevail. Such a victory is like persuading a judge to deny summary judgment, a step that transfers decision to a jury but does not end the litigation in defendant's favor and therefore does not make it a prevailing party. See Hanrahan v. Hampton, 446 U.S. 754 (1980); cf. Shalala v. Schaefer, 509 U.S. 292, 300-02 (1993). But the Supreme Court's decision in this case did not just put off the evil day for The Steel Company. It terminated this suit and barred all others like it, for as long as the statute retains its current language. It was a triumph in the war, not just in a battle or even a campaign.

The alternative of limiting "prevailing" to "prevailing on the merits" has nothing to recommend it under either the text of the statute or the considerations that lie behind fee-shifting statutes. Although this approach has found favor in some other circuits--see, e.g., Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 183 n.15 (3d Cir. 1999); Keene, 908 F.2d at 298; Branson, 62 F.3d at 293 (contra Elks National Foundation v. Weber, 942 F.2d 1480, 1485 (9th Cir. 1991)); GHK Exploration Co. v. Tenneco Oil Co., 857 F.2d 1388, 1391 (10th Cir. 1988)--this court has long been of the view that success on a fundamental jurisdictional point can make a litigant a "prevailing party". Charles is again our leading case.

Plaintiffs who had successfully challenged the constitutionality of a state law sought to recover attorneys' fees under sec.1988 not only from governmental defendants but also from three private intervenors. The district court directed two of the intervenors to reimburse plaintiffs for attorneys' fees they had incurred as appellees before the Supreme Court. The Court dismissed an appeal initiated by those intervenors after concluding that they lacked standing. In holding that appellees were prevailing parties in the Supreme Court proceedings, our panel observed that such parties should not be forced to "absorb the costs of defending lawsuits the appealing party lacked proper standing to bring." 846 F.2d at 1073. We see no reason in principle why a defendant that gets everything it desires after three tiers of litigation ending in a proclamation of "no jurisdiction" should have less entitlement to prevailing-party status than did the equivalently-successful appellees in Charles, who used a jurisdictional shield to retain what they had won in the district court. Moten, which we have already mentioned, also holds that a litigant may become a prevailing party by securing a jurisdictional victory of sufficient scope. And of course since 1875 courts have awarded costs to litigants that prevail on jurisdictional grounds, and did so in this very case--though under Fed. R. Civ. P. 54(d)(1) only a "prevailing party" recovers costs. We hold that when a dismissal for want of jurisdiction forecloses the plaintiff's claim, the defendant is the "prevailing party."

So much for CBE's first statutory argument. Its second is that The Steel Company is not entitled to fees, even as a "prevailing party," because sec.11046(f) should be read to incorporate the standard of Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978). According to Christiansburg, prevailing plaintiffs in civil-rights cases presumptively recover attorneys' fees, but an award should be made in favor of a prevailing defendant only if the suit was frivolous, unreasonable, or pursued in bad faith. CBE contends that the same standard should be used in environmental statutes, including sec.11046(f). The statute at issue in Christiansburg, 42 U.S.C. sec.2000e-5(k), provides that a court may "in its discretion . . . allow the prevailing party . . . a reasonable attorney's fee"; Christiansburg prescribes how district judges must exercise that discretion. Because sec.11046(f) also includes language conferring discretion on the judge (the "appropriate" phrase), CBE contends that discretion should be exercised with the same thumb on the scale in plaintiffs' favor.

Borrowing from Christiansburg is far from inevitable. Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994), holds that another fee-shifting statute, one with language materially identical to sec.2000e-5(k), must be applied to treat prevailing plaintiffs and prevailing defendants equally. Fogerty warns courts not to extend Christiansburg mechanically. See Stomper v. Amalgamated Transit Union, 27 F.3d 316 (7th Cir. 1994). But with respect to environmental laws the Court itself did this before Fogerty, and its approach controls here.

Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 560 (1986), says that the fee-shifting provisions of environmental statutes that promote private enforcement should be applied "in the same manner" as sec.1988, a statute covered by Christiansburg's asymmetric approach. Although the issue in Delaware Valley was whether plaintiffs could recover for post-judgment expenses of monitoring compliance with a consent decree, the proposition that environmental fee-shifting laws should be governed by the same principles as fee-shifting under sec.1988 formed the basis of the Court's disposition and therefore cannot be treated as dictum. The Steel Company has not identified any feature in the language or structure of sec.11046(f) that distinguishes it from the statute in Delaware Valley. Indeed, in a follow-up decision, Pennsylvania v. Delaware Valley Citizens' Council, 483 U.S. 711 (1987), the Court stated that its initial opinion had decided that "in awarding attorney's fees under sec.304(d) [of the Clean Air Act] the courts should follow the principles and case law governing the award of such fees under 42 U.S.C. sec.1988". 483 U.S. at 713 n. 1. A concurring opinion by Justice Thomas in Fogerty, 510 U.S. at 538, cited this passage as establishing that "we have construed similar attorney's fee provisions to impose a 'dual' standard of recovery". Until the Supreme Court suggests otherwise, this court must read "in the same manner" to mean just that. The Steel Company therefore is entitled to recover its legal expenses only if CBE's suit was frivolous, groundless, pursued in bad faith, or maintained after its baselessness became apparent.

Misconceived this suit was. Frivolous it was not. A panel of this court held that CBE was entitled to proceed. The Solicitor General supported that decision before the Supreme Court. A suit strong enough to survive an appeal cannot be deemed frivolous, even if all nine Justices thought it unavailing. We recognize that CBE did not win in this court; all it secured was the right to litigate on the merits. (The district court had dismissed its suit for want of jurisdiction.) No one suggests that CBE's claim

was frivolous on the merits, however, for The Steel Company concededly filed reports after the statutory deadlines. That's why The Steel Company needed to pitch its defense on jurisdictional grounds. Thus although we do not agree with the district court's reasons, we agree with its judgment: The Steel Company's request for fees was properly denied.

One last matter. The parties have squabbled over the content of The Steel Company's brief, and a motions judge ordered that CBE's motion to strike passages be taken with the case. The Steel Company depicts itself as a small and struggling manufacturer and asserts that CBE is a well-heeled environmental juggernaut, while CBE asserts that this is not supported by the record and that it is David to The Steel Company's Goliath. This dispute is irrelevant to our decision. We have no wish to encourage parties to answer emotional appeals with demands that we scrutinize those passages for details. If CBE feared that an exercise in statutory interpretation would be subverted by misconceptions about the parties' relative wealth, it was free to reply in its own brief without asking us to take a red pencil to its adversary's. Day v. Northern Indiana Public Service Corp., 164 F.3d 382 (7th Cir. 1999). Better still, litigants should give the judges some credit for ability to resolve legal issues in compliance with the oaths all of us have taken to "administer justice without respect to persons, and do equal right to the poor and to the rich" (28 U.S.C. sec.453). The motion to strike is denied.

Affirmed

RIPPLE, Circuit Judge, concurring.  This case presents two intertwined, yet independent, issues that we must address: 1) whether the district court had jurisdiction to award attorneys' fees to The Steel Company; and 2) whether The Steel Company was entitled to attorneys' fees as a "prevailing party" under the Emergency Planning and Right-To-Know Act, 42 U.S.C. sec.sec. 11001-50. My colleagues present a thoughtful analysis of these two issues. We are not in disagreement with respect to the result or with respect to the basic analysis. I agree that the district court

had jurisdiction to award attorneys' fees, that The Steel Company meets the requirements for a prevailing party under the Act, but that fees are not appropriate in the present action by virtue of the rule set forth in Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978). I write separately simply to emphasize how our decision today squares with our earlier precedent.

In my view, our court's analysis in Szabo Food Service v. Canteen Corporation, 823 F.2d 1073 (7th Cir. 1987), is especially helpful in understanding the scope of today's holding and in distinguishing it from other recent cases. In Szabo Food Service, this court identified the different meanings of "lack of jurisdiction." The first category we identified was "the image of subject matter jurisdiction." We stated:

If one citizen of Illinois files a suit based on state law against another citizen of Illinois, a federal court lacks jurisdiction over the subject matter; so too if a plaintiff files a specious civil rights suit, for an absurd complaint does not even invoke federal question jurisdiction. Yet a court has jurisdiction to determine its jurisdiction and therefore may engage in all the usual judicial acts, even though it has no power to decide the case on the merits. It may supervise discovery, hold a trial, and order the payment of costs at the end. If the complaint is indeed too silly to create subject matter jurisdiction, attorneys' fees should be an ordinary incident of the award of costs.

Id. at 1077-78 (citations omitted). The second sense of "lack of jurisdiction" was when a court "has lost [its] power to proceed, even though the case is within the federal judicial power." Id. at 1078. This second jurisdictional category most often comes into play when a court has entered a final judgment; in those circumstances, a court loses its ability to consider the merits of the action, but does "not also lose power to award attorneys' fees that may be in order as a result of what happened before the final decision." Id. at 1078. Finally, we discussed "a third 'jurisdictional' analogy [that] rests on the case or controversy requirement of Article III." Id. "When the plaintiff packs up his portfolio and goes home," we stated, "the case goes home with him. . . . Courts occasionally sum up the effect of the missing plaintiff by stating . . . : 'It is as if the suit had never been brought.' A court could not award attorneys' fees in a case that had never begun . . . ." Id. (citations omitted).

Our case law since Szabo Food Service has adhered to these categories. For example, in

Board of Education v. Nathan R., 199 F.3d 377 (7th Cir.), cert. denied, 68 U.S.L.W. 3775 (Oct. 2, 2000), we held that we could not consider an award of fees against a school corporation for deprivation of special education services when the action had been mooted by the student's graduation from high school. In those circumstances, "[b]ecause we would need to consider the merits to determine whether the Parents are prevailing parties, we agree[d] that we [could] not decide whether the Parents would be entitled to attorneys' fees from the proceedings in the district court." Id. at 381. In essence, we determined that a mooted case most closely resembles the third Szabo Food Service category; because we no longer had a controversy to decide, we could not determine issues, such as attorneys' fees, that were dependent upon our having decided the underlying controversy. See Lewis v. Continental Bank Corp., 494 U.S. 472, 480 (1990); see also Rhodes v. Stewart, 488 U.S. 1 (1988).

The situation in the present case is more closely akin to the first Szabo Food Service category. Here, there is no question that the district court, this court, and the Supreme Court, had the authority to receive briefs, to hear argument, and to consider the issue of whether there was federal jurisdiction to resolve the merits of the underlying controversy; the courts involved had jurisdiction to determine their jurisdiction. From the authority to determine its jurisdiction necessarily flows the power of the court to award attorneys' fees based on the actions properly before it. Consequently, the district court had the authority to award fees arising from the actions of the parties in the course of resolving the jurisdictional issue. As my colleagues point out, this court's decision in Charles v. Daley, 846 F.2d 1057 (7th Cir. 1988), points the way.

The question remains, however, whether attorneys' fees are available to The Steel Company. This inquiry requires that we decide whether it has prevailed for purposes of the Act. With respect to this issue, as my colleagues point out, the decision of the Supreme Court in Texas State Teachers Association v. Garland Independent School District, 489 U.S. 782 (1989), is instructive. In that case the Court addressed the issue of when a plaintiff might be considered a "prevailing party" for purposes of 42 U.S.C. sec. 1988. The Court stated that "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." Id. at 791-92; see also

Hewitt v. Helms, 482 U.S. 755 (1987). Here, CBE brought suit to collect fees from The Steel Company for failure to make required disclosures under the Act. The Steel Company, for its part, sought to prevent CBE from collecting those fees; one of the bases upon which it defended the action was to challenge CBE's standing to bring the action. The Supreme Court agreed with The Steel Company that CBE lacked standing; its decision therefore foreclosed CBE's recovery of fees. In the words of the Supreme Court, The Steel Company prevailed on a "significant issue in litigation"--CBE's standing, which achieved for The Steel Company the only benefit that it could derive in defending the action. Consequently, The Steel Company is a prevailing party for purposes of the Act.

As my colleagues hold, however, our analysis does not end here. I agree with my colleagues that sec. 11046(f) incorporates the standard of Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), and that standard precludes The Steel Company from recovering in the present action.